Schade, Appellant, *v.* Allegheny County Institution District.

Argued September 27, 1956. Before STERN, C. J., JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

reargument refused December 5, 1956.

*John A. Metz, Jr.* with him *Metz, McClure, Hanna & MacAlister,* for appellant.

*Maurice Louik,* Assistant County Solicitor, with him *Nathaniel K. Beck,* County Solicitor, *John F. Murphy,* and *Philip Baskin,* Assistant County Solicitors, for defendants-appellees.

*Joseph R. Doherty,* with him *McCloskey, Best & Leslie,* for Eudes Institute et al., appellees.

OPINION BY MR. JUSTICE JONES, November 12, 1956:

The plaintiff taxpayers instituted the instant suit in an effort to enjoin the commissioners of Allegheny County, acting in their capacity as executives and administrators of the Allegheny County Institution District (a body corporate), from paying out funds of the Institution District for the support, care and maintenance of delinquent, neglected or dependent children placed by the Juvenile Court of Allegheny County in sectarian or denominational homes and institutions having the necessary facilities for the service required.

The plaintiffs alleged in their complaint that the Juvenile Court Law of Allegheny County of June 3, 1933, P.L. 1449, and the County Institution District

Law of June 24, 1937, P.L. 2017, are unconstitutional in that, and to the extent, they require or provide for the payment of tax revenues raised by Allegheny County for the use of the Institution District to denominational or sectarian institutions or homes for the board, care and maintenance of neglected or dependent children on order of the Juvenile Court of Allegheny County. The Institution District filed a responsive answer which, inter alia, denied that either the provisions or the administration of the cited statutes were unconstitutional. Before trial, the Commonwealth was permitted to intervene as a party defendant but filed no answer. During the trial, ten institutions named in the complaint as being sectarian or denominational recipients of the Institution District's questioned payments were brought upon the record as additional defendants by order of the chancellor; eight of them appeared and filed answers denying that they were sectarian or denominational. It was stipulated of record by respective counsel that the two non-appearing additional defendants were non-sectarian, and were consequently removed from the case.

Extensive testimony was adduced at trial, and a considerable number of documentary exhibits were received in evidence. In due course, the learned chancellor filed an adjudication wherein he severally concluded, as matter of law, that the additional institutional defendants were sectarian and denominational, that the payments of money made to them by the Institution District were in violation of the provisions of Article III, Section 18 of the Constitution of Pennsylvania and that such payments should be restrained for the future. A decree *nisi* was entered accordingly enjoining the Institution District, its officers and agents from making payments out of their appropriations of any sums of money to any of the named sectarian or denominational institutions

for the support and maintenance of dependent or neglected children and also enjoining each of such institutions from receiving payment by the Institution District for the maintenance of dependent or neglected children committed to their respective organizations by order of the Juvenile Court of Allegheny County.

On exceptions to the adjudication and decree *nisi,* the court en banc (the chancellor dissenting) entered a final decree sustaining the defendants' exception to the chancellor's conclusion of law that the payments made by the Institution District to the defendant institutions were unconstitutional and dismissed the bill of complaint at the plaintiffs' costs. An opinion for the court, a concurrence and a dissent were respectively filed by the three judges composing the court en banc. Only one of the plaintiffs has appealed.

It was the plaintiffs' contention below, which the appellant renews here, that the payments made by the Institution District to the named denominational and sectarian institutions for the board, care and maintenance of dependent and neglected children committed thereto by the Juvenile Court of Allegheny County violated Article III, Section 18 of the Pennsylvania Constitution which provides that "No appropriations shall be made for charitable, educational or benevolent purposes to any person or community nor to any denominational and sectarian institution, corporation or association". The appellant also contends that such payments violate the due process clause of the Fourteenth Amendment of the Federal Constitution by effecting a deprivation of the liberty guaranteed by the First Amendment through the prohibition respecting "an establishment of religion." This question was not raised in the court below and got into the case solely by being dealt with

by the dissenting chancellor upon the entry of the final decree by the court en banc.

The opinion for the court is based principally on the conclusion that the inhibition of Article III, Section 18 of the Constitution is directed solely against appropriations of State funds by the legislature and does not apply to a governmental agency such as an Institution District. With that, we are unable to agree. The logical import of the holding is that any governmental instrumentality, created by the legislature, may appropriate its revenues derived from taxation to any person, community or denominational or sectarian institution for charitable, educational or benevolent purposes without let or hindrance. It is true that this court has said a number of times that Section 18 of Article III of the Constitution is a limitation upon the power of the legislature alone. See, e.g., *McCormick v. Fayette Co.*, 150 Pa. 190, 193, 24 A. 667. The wording of Article III actually so confirms: *Baldwin v. City of Philadelphia*, 99 Pa. 164, 170. But those cases had to do with municipal or quasi-municipal bodies and the term "law" in Article III was held not to include an ordinance. It would be strange, indeed, if the legislature by creating a body politic or corporate to exercise a legislative function could do indirectly what it may not do directly. It seems too plain for cavil that, if a mere creature of the legislature can do what the legislature itself is constitutionally prohibited from doing, the carefully designed prohibition of Section 18 of Article III could readily be rendered useless. Such a result is not to be sanctioned: *Collins v. Kephart*, 271 Pa. 428, 439, 117 A. 440.

We, therefore, choose to bottom our decision on the ground that payments made by the Institution District for the support and maintenance of neglected or dependent children, who are under the jurisdiction and control

of the Juvenile Court, are not appropriations within the meaning of that term as employed in Section 18 of Article III. Indeed, they were not appropriations at all within the most extended scope of the term. This view is so cogently set forth in the concurring opinion that we cannot do better than quote therefrom as follows: " . . . the plaintiffs have failed to prove any appropriations have, and are being made by [the Institution District] for charitable, educational or benevolent purposes to any denominational or sectarian institutions, or that any public funds are administered through such forbidden channels, or put under their control as an aid to such institutions.

"The cost of the maintenance of neglected children either by the State or the County is neither a charity nor a benevolence, but a governmental duty. All the plaintiffs proved was that the monies received by the defendant institutions were in partial reimbursement for the cost of room and board of such minors. The services had been rendered before partial payment on account of same was received. A considerable part of this money is recouped by the Juvenile Court from the parents of these minor wards. The balance of the funds so expended are, in legal effect, payments to the child,—not the institution supporting and maintaining him or her. [See *Cochran v. Board of Education*, 281 U.S. 370, 374-375] . . . .

"The Constitution does not prohibit the State or any of its agencies from doing business with denominational or sectarian institutions, nor from paying just debts to them when incurred at its direction or with its approval. Numerous cases can be readily visualized where such situations have occurred: i.e. payment of the bill of an injured employee to a sectarian hospital."

The appellant's further contention that such payments by the Institution District are in violation of the

due process clause of the Fourteenth Amendment is equally unmeritorious. Inasmuch as this point was not raised in the court below nor there passed upon by the majority, we are not required to consider it here: *Sherwood v. Elgart,* 383 Pa. 110, 115, 117 A. 2d 899. We shall, however, point out the fallacy of the appellant's argument.

As it has been held that the concept of liberty, as used in the due process clause of the Fourteenth Amendment, secures to the individual as against state action the same rights as are guaranteed against congressional action by the First Amendment (*Cantwell v. Connecticut,* 310 U.S. 296, 303; *Murdock v. Pennsylvania,* 319 U.S. 105, 108; *Everson v. Board of Education,* 330 U.S. 1, 15; and *McCollum v. Board of Education,* 333 U.S. 203, 211), the appellant argues that the Institution District's payments to the denominational or sectarian defendants tend toward governmental "establishment of religion" and, consequently, are violative of the Fourteenth Amendment. It is unnecessary to devote much time to this contention. The Supreme Court has, in principle, settled it adversely to the appellant's position. See *Everson v. Board of Education,* supra, where it was held that a State's use of public tax funds for the transportation of pupils to and from sectarian schools did not serve to promote the establishment of religion.

Decree affirmed at appellant's costs.