## School Health Services for Private and Parochial School Children

John D. Killian, 3rd, Deputy Attorney General, and David Stahl, Attorney General, January 9, 1963.

—In response to a question raised by the State Advisory Committee to the Interdepartmental School Health Council, you request advice concerning the legal authority of local school districts to use local tax funds to supplement State reimbursements in providing school health services to private and parochial school children.[1]

Article XIV of the Public School Code of March 10, 1949, P. L. 30, as amended, 24 PS §§14-1401 to 14-1423, requires all school districts and joint school boards to provide school health services to *all* children of school age within the Commonwealth.

"Health services" are defined in section 1402, 24 PS §14-1402, to include an annual vision test, a hearing test, height and weight measurements, chest X-rays and school nurse services. In addition, comprehensive health records are required to be maintained for each child of school age, and dental examinations are required to be given: section 1403, 24 PS §14-1403.

"Children of school age" or "child of school age" are defined in section 1401(1), 24 PS §14-1401(1), to mean "every child attending or who should attend an elementary grade or high school, either public or pri-

---

[1] This question involves an interpretation of the power of local school districts to expend tax funds, and the opinion of the State Department of Justice is not necessarily binding on the school districts. On the other hand, the Superintendent of Public Instruction, under section 1302 (d) of the Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §352, is required to give advice to school districts on school laws which, of course, would include the school health services article of the Public School Code discussed infra. The question involved is of State-wide application and it is, therefore, appropriate for this department to respond to your inquiry.

vate, within the Commonwealth and children who are attending a kindergarten which is an integral part of a local school district."

State reimbursements for health services rendered to children of school age by school districts and joint school boards are paid pursuant to section 2505.1 of the Public School Code of 1949, supra, as amended September 29, 1961, P. L. 1743, 24 PS §25-2505.1. This program of State-aid to local school districts is designed to relieve the districts of the major financial burden of the school health services program. However, health services in excess of those reimbursed by the Commonwealth may be provided by local school districts. Subsection (c) of section 2505.1, 24 PS §25-2505.1(c), expressly states:

"(c) Nothing herein contained shall be construed to prohibit any school district or joint school board from expending for health services amounts in excess of the reimbursable amounts."

These specific sections of the Public School Code of 1949, especially the latter quoted provision, establish the legal authority of local school districts to provide health services to school children attending private as well as public schools. Section 507 of the Public School Code of 1949, 24 PS §5-507, provides school districts with legal authority and power to levy and collect the necessary taxes required to provide school health services.

While the foregoing ostensibly supplies the answer to your inquiry, the question must be pursued further to consider the matter of the constitutionality of taxation to provide health services to private and parochial school children, whether by the Commonwealth or by its agents and instrumentalities, the local school districts.

Article X, sec. 2, of the Pennsylvania Constitution provides that "No money raised for the support of the

public schools of the Commonwealth shall be appropriated to or used for the support of any sectarian school." This constitutional provision does not prohibit the rendering of health services to parochial school children as the rendering of such services does not constitute an appropriation or use of tax moneys for the support of a sectarian school. Such services are intended to preserve the health of children, not to promote the sectarian school they might attend.

The distinction between aiding a sectarian institution and aiding an individual was clearly recognized by the Supreme Court of Pennsylvania in Schade v. Allegheny County Institution District, 386 Pa. 507, 126 A. 2d 911 (1956), where the court sustained the payment of funds by a county institution district for the support, care and maintenance of delinquent, neglected or dependent children placed by the Juvenile Court of Allegheny County in sectarian or denominational homes and institutions. The opinion of the court, written by Mr. Justice, later Chief Justice, Jones, specifically recognized the distinction between aiding needy children and promoting the establishment of religion.[2]

In Everson v. Board of Education of the Township of Ewing, 330 U. S. 1, 67 S. Ct. 504, 91 L. Ed. 711 (1946), the Supreme Court of the United States upheld the constitutionality of use of public tax funds for the transportation of pupils to and from parochial or private schools as a public welfare activity and as not serving to promote the establishment of religion. The opinion of the Supreme Court, delivered by Mr. Justice Black, contained the following significant language (330 U. S. at 16):

[2] The Schade case was considered at length in formal opinion no. 686, 1957 Op. Atty. Gen. 24, in which direct payments to sectarian or denominational nursing homes made at the request of needy persons applying for financial assistance for nursing home care were held not to offend the Constitution of Pennsylvania.

"... New Jersey cannot consistently with the 'establishment of religion' clause of the First Amendment contribute tax-raised funds to the support of an institution which teaches the tenets and faith of any church. On the other hand, other language of the amendment commands that New Jersey cannot hamper its citizens in the free exercise of their own religion. Consequently, it cannot exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, because of their faith or lack of it, from receiving the benefits of public welfare legislation. While we do not mean to intimate that a state could not provide transportation only to children attending public schools, we must be careful, in protecting the citizens of New Jersey against state-established churches, to be sure that we do not inadvertently prohibit New Jersey from extending its general state law benefits to all its citizens without regard to their religious belief."

The Schade case is authority for the proposition that tax funds may be expended in the furtherance of an admittedly governmental function, the care of needy children, and that such expenditure does not constitute support or establishment of religion. Essentially the same reasoning was used to reject the constitutional attack in Everson, where the court deemed the transportation of school children "public welfare legislation."

The holdings in these cases apply with striking force to the question under consideration. The protection and preservation of the health of school children is clearly a proper governmental function in the nature of public welfare legislation, whether the children attend public, private or parochial schools, and the use of tax funds for this purpose cannot successfully be attacked on constitutional grounds. In fact, our question presents less difficulty as no tax moneys are being paid directly to

sectarian schools or institutions, and school health services provided to individual children can hardly be found to aid even remotely the sectarian school attended by the recipients of such services.

We are, therefore, of the opinion and you are accordingly advised that local school districts may expend local tax funds to supplement State reimbursements in providing school health services to private and parochial school children.