OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* "Anti-Aid" amendment, Use of public money or
property, Education. *Education. Words,* "Aiding."

Substantial reimbursement by the Commonwealth of nonpublic schools
for certain expenses incurred by them in furnishing instruction in
various secular subjects, described in proposed legislation as a "pur-
chase" by the Commonwealth of such "secular educational services,"
would constitute "aiding" such schools in violation of § 2 of art. 46
of the Amendments of the Massachusetts Constitution.

On May 11, 1970, the Justices submitted the following
answer to a question propounded to them by the Senate.

To the Honorable the Senate of the Commonwealth of
Massachusetts:

The undersigned Justices of the Supreme Judicial Court
respectfully submit this answer to the question set forth in
an order of the Senate adopted on March 23, 1970, and
transmitted to us on March 25. The order recites the
pendency before the Senate of a bill, Senate No. 1278, a
copy of which has been transmitted with the order. The
bill is entitled "An Act providing for the purchase by the
commonwealth of secular educational services from non-
public schools." The order states that grave doubt exists
as to the constitutionality of the bill if enacted into law.

The bill has an emergency preamble and proposes to
amend the General Laws by inserting after chapter 71 a
new chapter 71A, entitled "Nonpublic Education Assis-
tance." The bill contains twenty definitions (§ 1), which in-
clude the following, explaining the meaning of the title to
Senate No. 1278.

"'Nonpublic school', an elementary or secondary school
within the commonwealth, other than a public school, offer-
ing education for grades one through twelve, or any com-

bination of them, wherein any child may legally fulfill compulsory school attendance requirements."

"'Purchase secular educational service', the purchase by the commissioner from a nonpublic school, pursuant to contract, of secular educational services at the reasonable cost thereof.

"'Reasonable cost', the actual cost to a nonpublic school of providing secular educational services to students who are residents of Massachusetts, not exceeding the cost pertaining thereto of teachers' salaries, textbooks, instructional materials and administration of standard educational testing.

"'Secular educational service', the providing of instruction in a secular subject.

"'Secular subject', one of the following courses found in the curricula of the public schools of the commonwealth, and which does not contain subject matter expressing religious teaching or the moral doctrines or forms of worship of any sect: language arts [English], mathematics, modern foreign languages, physical science, physical education, vocational education, and business education.

"'Teacher', a full-time instructor in a nonpublic school, who meets public school certification standards.

"'Teachers' salaries', the base amount in dollars actually paid by nonpublic schools to a nonpublic school teacher and not including allowances, contributions," for insurance, retirement or pension or any other fringe benefit. "Such salaries shall be . . . limited to the salary paid in the public school system of the . . . district in which the nonpublic school is located, for a teacher of similar experience and education."

The administration of this chapter is under the direction of the Commissioner of Education, who shall establish rules, "make contracts with nonpublic schools . . . for the purchase by the commonwealth of secular educational services" under the chapter, execute all necessary instruments, and appoint a director of the Office of Nonpublic Education and other necessary administrative personnel (§ 2). There is created by § 3 a Nonpublic Education Assistance Fund to

purchase "secular educational services." The fund is to "consist only of monies appropriated to it by the general court for the specific purposes of" the chapter and is to "be expended, without further appropriation, upon order of the" Commissioner only for such purposes. "No money raised by taxation in the towns and cities for the support of the public schools and no monies . . . appropriated by the commonwealth for the support of common schools shall be used . . . for the purchase of secular educational services or in connection with the administration of this chapter."

Section 4 provides that to "be eligible to receive payment under contracts" made under § 2 "a nonpublic school shall have a policy of open enrollment, shall have employed, in courses contracted for, solely textbooks and other instructional materials approved by the commissioner, and shall have attained a satisfactory level of pupil performance in standardized tests approved by the commissioner."

It is provided in § 5 that "[r]equests for reimbursement in payment for the purchase of secular educational services" shall be on forms and subject to conditions prescribed by the Commissioner. Any nonpublic school seeking reimbursement shall maintain accounting procedures and records, including separate funds, adequate to establish its claim. The accounts shall be subject to audit by the State auditor. Reimbursements are to be made by the Commissioner in four equal instalments on the first days of September, December, March, and June of the school term following that in which the services were rendered. Reimbursement for any fiscal year for the purchase of secular educational services shall not exceed the yearly total of appropriations. If in any fiscal year the amount appropriated for the fund is insufficient to pay validated requests for reimbursement, proportionate payments are to be made. On or before July 15 the budget director shall certify to the Commissioner the total amount in the fund. All section references above are to proposed c. 71A.

There is a severability provision (§ 2) in the proposed bill. The bill proposes an effective date of July 1, 1970 (§ 3).

The question is:

"Would the purchase by the commonwealth of secular educational services from nonpublic schools, as provided in the bill, violate the provisions of section 2 of Article XLVI of the Articles of Amendment to the Constitution of Massachusetts?"

Article 46 of the Amendments to the Constitution of the Commonwealth, adopted (November 6, 1917) in place of art. 18 of the Amendments, reads in part as follows: "Section 2. [A] All moneys raised by taxation in the towns and cities for the support of public schools, and all moneys which may be appropriated by the [C]ommonwealth for the support of common schools shall be applied to, and expended in, no other schools than those which are conducted according to law, under the order and superintendence of the authorities of the town or city in which the money is expended; and [B] no grant, appropriation or use of public money or property or loan of public credit shall be made or authorized by the commonwealth or any political division thereof for the purpose of founding, maintaining or aiding any school or institution of learning, whether under public control or otherwise, wherein any denominational doctrine is inculcated, or any other school, or any college, infirmary, hospital, institution, or educational, charitable or religious undertaking, which is not publicly owned and under the exclusive control, order and superintendence of public officers or public agents authorized by the commonwealth or federal authority or both, except that appropriations may be made for the maintenance and support of the Soldiers' Home in Massachusetts and for free public libraries in any city or town, and to carry out legal obligations, if any, already entered into; and no such grant, appropriation or use of public money or property or loan of public credit shall be made or authorized for the purpose of founding, maintaining or aiding any church, religious denomination or society. Section 3. Nothing herein contained shall be construed to prevent the commonwealth, or any political division thereof,

from paying to privately controlled hospitals, infirmaries, or institutions for the deaf, dumb or blind not more than the ordinary and reasonable compensation for care or support actually rendered or furnished by such hospitals, infirmaries or institutions to such persons as may be in whole or in part unable to support or care for themselves." The letters [A] and [B] in brackets are inserted in the quoted provisions of § 2 to assist reference to the language immediately following such letters, respectively.

Prior to the adoption of art. 46, art. 18 of the Amendments read as follows: "All moneys raised by taxation in the towns and cities for the support of public schools, and all moneys which may be appropriated by the state for the support of common schools, shall be applied to, and expended in, no other schools than those which are conducted according to law, under the order and superintendence of the authorities of the town or city in which the money is to be expended; and such money shall never be appropriated to any religious sect for the maintenance, exclusively, of its own school."

The occasion for the introduction of Senate No. 1278 is indicated by a proposed recital or legislative declaration (hereafter referred to as "the proposed legislative finding") at the beginning of the bill, "that a time of acute public exigency and distress now exists in the commonwealth with respect to educating its children, due to . . . an extreme increase in the cost of education and an intense new recognition of the need of all young citizens for excellence in education; that if the educational crisis . . . is to be resolved, the total educational resources of the community must be utilized . . .; that . . . [254,601] elementary and secondary school pupils, or . . . [19.1%] of the entire pupil population of the commonwealth, in the exercise of conscience, obtain their education today in nonpublic schools; that, without allowance for inflationary increase, the full cost of educating these pupils in public schools would each year be an additional . . . [$179,000,000]; that these nonpublic schools perform a secular function . . . and thus

make an important contribution to the public welfare; that hazard to the education of all Massachusetts children, arising from the educational crisis, may be substantially reduced and all education in the commonwealth improved through the purchase of secular educational services from Massachusetts nonpublic schools, based on fair and adequate consideration; that the commonwealth has the right and freedom to enter into contracts for the purchase of needed services with persons or institutions, whether public or nonpublic, sectarian or nonsectarian; that, education being one of the first objects of public care, the good and welfare of this commonwealth are advanced by the purchase of secular educational services as herein provided."

We invited briefs from interested persons. We have received most helpful and thorough briefs from counsel for the Roman Catholic Dioceses of Massachusetts and from attorneys representing nine other religious or civic organizations. We have also had the advantage of careful memoranda prepared for the Legislative Research Council and for the Legal Task Force of the Special Commission to Study Public Financial Aid to Non-Public Primary and Secondary Schools.

The question concerns only § 2 of art. 46 of the Amendments. We thus have no occasion to consider, and expressly do not consider, whether Senate No. 1278 in any respect would violate the First Amendment to, or any other part of, the Constitution of the United States. We merely make note of the circumstance that issues concerning the constitutionality under the First Amendment of a Pennsylvania statute, in many respects similar to Senate No. 1278, are now pending before the Supreme Court of the United States in a controversy not likely to be decided until October term, 1970. See *Lemon* v. *Kurtzman*, 310 F. Supp. 35 (E.D. Pa. — three judge court), probable jurisdiction noted, 397 U. S. 1034. The conclusions which we reach are based solely on the explicit language of art. 46, § 2, of the Amendments, which is much more specific than that of the First Amendment. It may be noted that the Pennsylvania statute

considered in *Lemon* v. *Kurtzman, supra,* was adopted in the light of art. 3, § 29, of the Pennsylvania Constitution, which is the provision most nearly resembling art. 46 of the Amendments. Section 29, however, is expressed in much more general terms than art. 46, § 2, and contains no such emphatic and comprehensive prohibition as that found in the later part of § 2. It has been interpreted as permitting certain dealings with sectarian institutions. *Schade* v. *Allegheny County Inst. Dist.* 386 Pa. 507, 512 (reimbursement of cost of care of neglected children).

The first part of art. 46, § 2, closely resembles the first part of art. 18, adopted in 1855. The language of the later part of art. 46, § 2, beginning at point [B], however, was first inserted as a consequence of the 1917–1918 Constitutional Convention. This was the novel aspect of the amendment submitted to the people in 1917. This language is clear and peremptory and we rest this opinion on that language alone. We need not consider whether Senate No. 1278 would offend against the prohibition of the first part of art. 46, § 2 (following [A]).

The later part of art. 46, § 2 (following [B], already quoted in full), is more comprehensive than the earlier portion. The controlling words are: "[N]o grant, appropriation or use of public money or property or loan of public credit shall be made or authorized by the commonwealth or any political division thereof for . . . aiding any school . . . whether under public control or otherwise, wherein any denominational doctrine is inculcated, or any other school . . . which is not publicly owned and under the exclusive control . . . of public officers . . . authorized by the commonwealth or federal authority or both." Then follow exceptions not here pertinent.

What is proposed by Senate No. 1278 must be tested against the language of this prohibition. It contemplates in effect that nonpublic schools, "offering education for grades one through twelve," be reimbursed for the "reasonable cost" of providing secular educational services, i.e. instruction in language arts (English), mathematics, modern

foreign languages, physical science, physical education, vocational education, and business education. These subjects of instruction constitute a major part of the curriculum of grades one through twelve. The reimbursable "reasonable cost" is to include the actual cost, to the nonpublic school furnishing the services, of teachers' salaries (without fringe benefits or retirement and pension provision), textbooks, instructional material, and standard educational testing. The request for our opinion does not recite the portion of the total expense of such a school which would thus be reimbursed, but it plainly would be a substantial, if not a major, part of such expense. Reimbursement presumably would be made for this part of the cost of educating most students at such non-public schools for it would cover "services to students who are residents of Massachusetts." The unequivocal language of the later part of art. 46, § 2, compels us to advise (a) that such substantial assistance to a nonpublic school from public funds amounts to "aiding" as the term is used in the second part of § 2, and (b) that Senate No. 1278, if enacted, would be in violation of § 2.

There can be no doubt that the explicit language was intentional. See 1 Debates in the Massachusetts Constitutional Convention of 1917–1918, 44, 50, 59–70, 72–119, 135–227, 234–279, 360–362; Convention Docs. 306, 334, 338, 347, 348, and 364. Conflicting views on the subject matter in the Convention's Committee on the Bill of Rights were resolved with the introduction of a revised proposal, which was substantially in the form of art. 46 as adopted. See 1 Debates, 72–73, 79–81. See also Bridgman, The Massachusetts Constitutional Convention of 1917, 22–40; Loring, A Short Account of the Massachusetts Constitutional Convention, 1917–1919, 6 New Eng. Q. 1, 25–37. The proposed amendment as so revised obtained the unanimous support of all members of the committee, a body representative of many different views and groups. Other delegates joined in the debates in support of the report which (with minor revisions) was adopted in the Convention by a vote of 275 to 25. It then went to the people and was adopted

by a wide margin. Amendments of proposed art. 46 which would have relaxed its rigorous effect were rejected in the convention. The language unquestionably was designed to preclude entirely aid to all nonpublic institutions from appropriated public funds with minor exceptions not here relevant. The Convention clearly recognized that aid might take the form of purchase of services, for in art. 46, § 3, express permission was given for "paying to privately controlled hospitals, infirmaries, or institutions for the deaf, dumb or blind not more than . . . ordinary . . . compensation for care . . . actually rendered . . . to such persons . . . unable to . . . care for themselves."

The applicable court opinions and executive interpretations relating to art. 46 have consistently treated it as forbidding aid from appropriated funds to any nonpublic institution not within the very limited exceptions found in art. 46, §§ 2 and 3. In *Massachusetts Soc. for the Prevention of Cruelty to Animals* v. *Commissioner of Pub. Health*, 339 Mass. 216, 229–230, we found no appropriation or grant of funds to any institution in making available certain abandoned and homeless animals for scientific institutions. In *Opinion of the Justices*, 354 Mass. 779, 784, the Justices advised that no violation of art. 46 by any "grant or appropriation of public money" was contemplated under proposed legislation creating the Educational Facilities Authority (St. 1968, c. 614). See *Worcester* v. *New England Inst. & New England Sch. of Accounting, Inc.* 335 Mass. 486, 489–490. See also *Vermont Educ. Bldgs. Fin. Agency* v. *Mann*, 127 Vt. 262, 269–271. Opinions of the Attorney General discussing art. 46 include 5 Op. Atty. Gen. 711, 714; 6 Op. Atty. Gen. 356, 448; Rep. A. G., Pub. Doc. No. 12, 1966, 370; Rep. A. G., Pub. Doc. No. 12, 1967, 64, 188. Opinions before 1917, dealing with the more limited prohibition found in art. 18 of the Amendments, took a comparable view. See *Jenkins* v. *Andover*, 103 Mass. 94, 97, 101–103; *Opinion of the Justices*, 214 Mass. 599, 601. See also 1 Op. Atty. Gen. 319, 322.

We are faced with the language of art. 46, § 2, as it was

adopted in 1917 and as it has remained unchanged for over fifty years. Those who opposed the measure in the Convention and when it was submitted to the people for adoption challenged its wisdom. The Debates, however, reveal no doubt as to the meaning and effect of the language. It is still applicable despite changed conditions and probably somewhat different public attitudes. The existence of an emergency (see the proposed legislative finding in Senate No. 1278) cannot alter the unequivocal terms of art. 46, § 2. It constitutes a binding constitutional restraint upon the General Court and upon us until and unless it is changed by some method permitted by the Constitution of the Commonwealth.

Opinions from other States, with different constitutional provisions, are not controlling. See *Opinion of the Justices,* 109 N. H. 578. Cf. *Opinion of the Justices,* 261 Atl. 2d 58 (Maine).

We answer the question "Yes."

RAYMOND S. WILKINS.
JOHN V. SPALDING.
R. AMMI CUTTER.
PAUL G. KIRK.
JACOB J. SPIEGEL.
PAUL C. REARDON.
FRANCIS J. QUIRICO.