729 A.2d 1113

Ronald DENBOW, Vernon S. Krayniewski and
Andrew Pszenny, Police Wage and Policy
Committee, Appellants,

v.

BOROUGH OF LEETSDALE, Appellee.

Supreme Court of Pennsylvania.

Argued Sept. 14, 1998.

Decided June 8, 1999.

Ronald P. Koerner, Pittsburgh, for Ronald Denbow.

Richard F. Start, Pittsburgh, for Borough of Leetsdale.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

### OPINION

SAYLOR, Justice.

This appeal presents a single issue of first impression: Does Article III, Section 26 of the state Constitution, which provides in pertinent part that "[n]o bill shall be passed giving any extra compensation to any public officer, servant, [or] employe ... after services shall have been rendered or contract made," operate to prohibit a municipality from granting raises to municipal employees who are already covered by an employment contract?

On December 30, 1991, Appellee, the Borough of Leetsdale (the "Borough"), through the Borough Council (the "Council"), entered into a collective bargaining agreement with the Wage and Policy Committee of the Borough's police officers. The agreement covered the terms and conditions of employment, including wages, for the years 1992 through 1994. It did not include a "wage re-opener" provision.

On November 2, 1993, two members of the Council were defeated in municipal elections. The next day, the Council voted to approve an addendum to the collective bargaining agreement giving three police officers substantial pay increases in 1994. The Council later approved a pay increase for a fourth officer who had inadvertently been omitted from the addendum. The vote to approve the pay increases was 5–2, with the two defeated members voting with the majority.

In January of 1994, the newly reorganized Council repudiated the addenda to the collective bargaining agreement. When the Borough refused to pay the salary increases, three police officers and the Wage and Policy Committee (collectively, "Appellants") filed a breach of contract action against the Borough. In its answer and new matter, the Borough asserted that the addenda on which Appellants based their action were "illegal and against public policy as they were improper attempts by a 'lame duck' counsel [sic] to enter into 'midnight contracts' which would bind their successors in office." At the trial court's request, the parties also briefed and argued the issue of whether the pay increases were invalid under Article III, Section 26.[1]

Following a non-jury trial, the court entered a verdict in favor of the Borough. In an accompanying opinion, the court opined that if the matter at issue were solely a question of private sector contract law, Appellants would "most certainly" be entitled to recover. Since the matter at issue involved an agreement entered into by a political subdivision of the Commonwealth, however, the court held that Section 26 of Article III prohibited the pay raises granted by the Council. The Commonwealth Court affirmed. *Denbow v. Borough of Leetsdale*, 699 A.2d 838 (Pa.Cmwlth.1997).

Appellants do not dispute that the pay increases granted to the Borough's police officers constitute extra compensation given to public employees after a contract with those employees had already been made. Rather, they argue that Article III's proscription of such extra compensation applies only to actions of the General Assembly, not to actions of local munici-

---

**1.** Section 26 reads in its entirety as follows: "No bill shall be passed giving any extra compensation to any public officer, servant, employe, agent or contractor, after services shall have been rendered or contract made, nor providing for the payment of any claim against the Commonwealth without previous authority of law: Provided, however, That nothing in this Constitution shall be construed to prohibit the General Assembly from authorizing the increase of retirement allowances or pensions of members of a retirement or pension system now in effect or hereafter legally constituted by the Commonwealth, its political subdivisions, agencies or instrumentalities, after the termination of the services of said member."

palities. We granted allowance of appeal limited to this issue.[2] As with any issue of law, our scope of review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 130, 665 A.2d 1167, 1170 (1995).

Appellants rest their claim of non-applicability on two grounds. First, they assert that it is clear from the plain language of Article III that its provisions apply only to the General Assembly of Pennsylvania. Second, they maintain that the decisions of this Court in *McKinley v. School Dist. of Luzerne Township*, 383 Pa. 289, 118 A.2d 137 (1955), and *Retirement Bd. of Allegheny County v. McGovern*, 316 Pa. 161, 174 A. 400 (1934), taken together, lead inevitably to the same conclusion.

As for Appellants' first argument, it is beyond dispute that Article III of the Pennsylvania Constitution is addressed to the General Assembly. Article III is preceded by Article II, which is entitled "The Legislature," and which declares in Section 1 that "[t]he legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." Article III, entitled "Legislation," specifies the procedures by which the General Assembly shall enact legislation. For example, Section 1 provides that "[n]o law shall be passed except by bill, and no bill shall be so altered or amended, on its passage through either House, as to change its original purpose." Article III is thus "an authorization and limitation of the legislation *of the [C]ommonwealth.*" *Commonwealth v. Griest*, 196 Pa. 396, 408, 46 A. 505, 507 (1900) (emphasis added). In Section 26 of Article III, "[t]he Constitution provides that *the General Assembly* may NOT: ... [g]ive extra compensation after service rendered or contract made, except pensions and retirement." WOODSIDE, PENNSYLVANIA CONSTITUTIONAL LAW 301–02 (1985) (emphasis added). Article IX, moreover, is entitled and addresses "Local Government."

2. Appeal was not allowed with regard to Appellants' second issue: whether, even if Section 26 does apply to municipal actions, Act 111 (43 P.S. §§ 217.1–217.10) nevertheless gives municipalities "authority of law" under Section 26 to provide extra compensation to public employees prior to the termination of their employment contracts.

With this argument, however, Appellants demonstrate no more than that Section 26 of Article III governs actions of the General Assembly. Still to be answered is the question of whether Section 26 has been or should be interpreted as applying also to actions of local municipalities. Appellants contend that this Court, by its decisions in *McGovern* and *McKinley,* has implicitly rejected such an interpretation.

The issue in *McGovern* was whether the Retirement Act of May 2, 1929, P.L. 1278, violated, *inter alia,* Section 11 (now 26) and Section 13 (now Section 27) of Article III. Section 11 was in pertinent part identical to its successor; and Section 13 provided, as Section 27 does now, that "[n]o law shall extend the term of any public officer, or increase or diminish his salary or emoluments, after his election or appointment." Appellants, a majority of the Commissioners of Allegheny County, argued that receipt of full retirement pay by employees who retired shortly before the Act went into effect, and who had necessarily made few payments into the retirement system, constituted an unconstitutional increase in compensation. In the course of its analysis, this Court noted, without further explanation, that Section 11 "should be read in connection with section 13 ... of the same article." *Id.* at 168, 174 A. at 404. The Court found no constitutional violation, concluding that the benefits in question were a form of delayed compensation for services rendered. *Id.* at 168–69, 174 A. at 404.

In *McKinley,* this Court entertained an appeal from a decree entered in an equity action brought by a taxpayers' association, which decree had reduced the rate of commission received by the school district's tax collector from the rate that had been fixed by the board of school directors. On appeal, the tax collector argued, *inter alia,* that the trial court's decree violated Section 13 (now 27) of Article III. This Court rejected his argument on the ground that Section 13 "applies only to a *law,* which means an act of the legislature, and not to action by any municipal or local authority." [3] *Id.* at 292–93, 118 A.2d at 139 (emphasis in original).

---

3. The Commonwealth Court sought to distinguish *McKinley* by pointing out that *McKinley,* unlike the present case, addressed the constitutional-

Appellants argue that since this Court held in *McGovern* that Sections 11 (now 26) and 13 (now 27) should be read in connection with each other, the limitation on the applicability of Section 13 that was recognized by the Court in *McKinley* must characterize Section 11 as well. Thus, according to Appellants, the latter section, now Section 26, does not restrain the actions of a municipality.

The Borough argues, however, that, in the words of the Commonwealth Court, "review of the relevant case law discloses that Article 3, Section 26 most assuredly applies to . . . actions taken by municipalities." *Denbow,* 699 A.2d at 841. Of particular importance to the Borough's arguments are this Court's decisions in *Harbold v. City of Reading,* 355 Pa. 253, 49 A.2d 817 (1946), and *Francis v. Neville Township,* 372 Pa. 77, 92 A.2d 892 (1952).[4]

The dispute in *Harbold* centered on the issuance in 1933 of "improvement bonds" to finance street improvements in the City of Reading. Pursuant to a city ordinance, the bonds were expressly made payable out of the assessments levied upon the properties benefited by the improvements, with the City having no liability except for the collection of the assessments. Nevertheless, when several of the assessments proved uncollectible, Samuel W. Harbold, a bondholder, sued the City in assumpsit, basing his claim in part on the Act of May 26, 1943, P.L. 660. This "validating statute" provided that whenever, prior to January 1, 1942, a municipal corporation had issued bonds for the payment of the cost of a public improvement on the assumption that such bonds were not debts of the municipality, "such bonds and obligations are hereby ratified, confirmed and made valid and binding obligations and debts of

---

ity of a trial court decree. Such distinction is unavailing, however, since the Court's disposition of the constitutional challenge in *McKinley* rested upon the finding that the constitutional provision at issue did not apply to the actions of municipal or local authorities.

4. Also cited by the Borough are *Township of Tinicum v. Fife,* 95 Pa.Cmwlth. 516, 505 A.2d 1116 (1986), and *City of Reading v. Feltman,* 127 Pa.Cmwlth. 618, 562 A.2d 926 (1989), in which the Commonwealth Court held that the challenged actions of the municipality did not violate Section 26. Both cases involve retirement benefits, and neither provides an analysis that is helpful to the present case.

the municipality." The trial court awarded judgment to the plaintiff.

On appeal, the City argued that the legislature's Act of May 26, 1943, violated, *inter alia*, section 11 (now 26) of Article III. Before stating its conclusion, this Court took pains to clarify the precise nature of the situation at issue. It was not a situation, the Court observed, in which the City was under a moral, albeit not a legally enforceable, obligation to the bond-holders; to the contrary, the effect of the Act was to grant to the bondholders "a pure gratuity, a windfall. . . ." *Id.* at 257, 49 A.2d at 819. Nor, the Court went on, was it required to decide whether the City could have entered into a contract whereby it undertook to bear the entire cost of the project; it could have chosen to do so, the Court noted, but it did not.

Rather, the question before the Court was this:

[S]ince, in fact, the contractor was to receive payment only from the abutting property owners, could the legislature, by its mere fiat, subsequently impose upon the city an absolute liability purely for the private benefit of the contractor or those to whom the bonds originally issued to the contractor had been assigned?

*Id.* at 258, 49 A.2d at 820. The Court's answer was that

power has never been judicially conceded in this State to a legislature to appropriate money or loan the public credit, or compel a municipality to make ... such a loan or appropriation, merely for the benefit of private corporations or individuals, where no ... equitable or moral obligation exists and no public purpose is thereby advanced.

*Id.* at 260, 49 A.2d at 821 (emphasis added). As illustration, the Court pointed to various decisions in which it had denied the existence of such a power on the part of the legislature or of a municipality. *See, e.g., Longstreth v. City of Philadelphia*, 245 Pa. 233, 91 A. 667 (1914) (finding that city ordinance appropriating extra funds for contractor was invalid, as city was under no legal or moral obligation to pay contractor's claim); *Cunningham v. Dunlap*, 242 Pa. 341, 89 A. 129 (1913) (finding same, and declaring that ordinance in question was

not authorized by Act of May 23, 1874, which authorized municipalities to pay for benefits actually received but not contracted for); *Faas v. Warner*, 96 Pa. 215 (1880) (declaring that act of legislature directing county to pay private debt of sheriff was void for want of constitutional power to enact it). The Court's decisions in these cases did not rest upon violations of specific constitutional provisions, but upon the Court's recognition of the inherent limitations of governmental power.

From this vantage point, the Court in *Harbold* proceeded to conclude that the Act of May 26, 1943, was unconstitutional because it violated, *inter alia*, Section 11 (now 26) of Article III.[5] The Court's summary of its reasoning, which follows, is relevant to our decision in the present case.

> [A]s the legislature could not constitutionally *authorize* the city to appropriate money or loan its credit to this contractor or to the plaintiff bondholder, a fortiori it could not *compel* the city to make such a loan or appropriation. Even apart from express constitutional restrictions, while legislative ... authority over municipal corporations is extremely great, there are, nevertheless, some inherent limits to its power in that regard springing from the very nature of our government and from our general conception of governmental power. It would be intolerable if *any legislative body, municipal, state or national,* were to be allowed to make a grant to individuals of public funds in the absence of any legal, equitable or moral right thereto. Nor can the legislature, under the guise of a moral obligation, enact such legislation if it is abundantly clear that no such obligation exists....

*Id.* at 265, 49 A.2d at 823–24 (emphasis in second sentence added). In sum, not only could the General Assembly not require the City to assume an obligation to the bondholders,

5. The Court held that the Act also violated Section 7 of Article IX, which provided in pertinent part that "[t]he General Assembly shall not authorize any county, city, borough, township or incorporated district to obtain or appropriate money for, or to loan its credit to, any corporation ... or individual." The principle set forth in former Section 7 is now incorporated in Section 9 of Article IX.

but it could not even authorize the City to do so by its own choice.

The case of *Francis v. Neville Township* involved facts somewhat similar to those of the present case. Upon the retirement of an employee who had served the Township for 28 years, the Township's Board of Commissioners passed Ordinance No. 361, awarding the employee a monthly pension for the rest of his life. The purported authority for the Commissioners' action was Section 605 of the Act of May 27, 1949, P.L.1955, which provided, in pertinent part, that "[a] township may, by ordinance, provide as compensation to employes [of a certain age and term of service] a proportion of the compensation last paid to them. . . ." When the succeeding Board of Commissioners rescinded the ordinance, the retired employee filed a complaint in mandamus to compel the Township to fund his pension. The trial court sustained the Township's preliminary objections and dismissed the complaint.

The employee appealed, and the Township argued that the Act of May 27, 1949, pursuant to which Ordinance No. 361 had been passed, was unconstitutional. This Court found it unnecessary to address that argument, noting that the Act authorized townships to provide retirement pay to a certain category of employees, not—as Ordinance No. 361 had done—to one employee. It was the challenged ordinance itself, the Court concluded, that was *ultra vires*, as it "offend[ed] against" both the Act and Section 7 of Article IX of the state Constitution. *Id.* at 79, 92 A.2d at 893. As noted earlier, Section 7 provided in pertinent part that "[t]he General Assembly shall not authorize any county, city, borough, township or incorporated district to . . . appropriate money . . . to . . . any . . . individual." Significantly, the Court concluded that, "since the Legislature may not authorize such a procedure, it naturally follows that a Township Board of Commissioners may not do it on its own." *Id.* at 80, 92 A.2d at 893. The Court then noted, among "[o]ther pertinent provisions of the State Constitution," Section 11 (now 26) of Article III. *Id.* Concluding its analysis of the constitutional question, the Court observed that "[u]n-

bridled financial chaos would result if municipal bodies were permitted to monetarily reward specific individuals, no matter how praiseworthy their services and how profound their devotion to the welfare of the particular township, board or city." *Id.* at 80, 92 A.2d at 893–94.

As this review of the case law makes clear, both parties argue by implication from decisions that are supportive of their respective positions but are not directly on point. Appellants argue, in essence, that a municipality may undertake that which Section 26 of the Constitution forbids to the General Assembly because Section 26 does not apply to municipalities. The Borough, by contrast, asserts that the constraint which Section 26 imposes on the General Assembly likewise binds a municipality.

■■■ The present case, like *Harbold* and *Francis*, concerns the power of a municipality to expend public funds for the benefit of certain individuals. That being the case, it is the Borough's position that comports most closely with the role of municipalities in our system of government. As the Commonwealth Court has observed,

> [i]t is fundamental that municipal corporations are creatures of the State and that the authority of the Legislature over their powers is supreme. *Shirk v. Lancaster City,* 313 Pa. 158, 169 A. 557 (1933). Municipal corporations have no inherent powers and may do only those things which the Legislature has expressly or by necessary implication placed within their power to do. *Appeal of Gagliardi,* 401 Pa. 141, 163 A.2d 418 (1960).

*Knauer v. Commonwealth,* 17 Pa.Cmwlth. 360, 363, 332 A.2d 589, 590 (1975); *see also* WOODSIDE, PENNSYLVANIA CONSTITUTIONAL LAW 507 (observing that "[l]ocal governments are creatures of the legislature from which they get their existence, their frame of government, their powers and their duties"). The legislature, in turn, may delegate or grant only those legislative powers which are constitutionally permitted. *Cleaver v. Board of Adjustment of Tredyffrin Township,* 414 Pa. 367, 373, 200 A.2d 408, 412 (1964). "Any fair, reasonable

doubt as to the existence of power [in a municipality] is resolved by the courts against its existence...." *Knauer*, 17 Pa.Cmwlth. at 363–64, 332 A.2d at 591 (quoting *Kline v. Harrisburg*, 362 Pa. 438, 443, 68 A.2d 182, 184–85 (1949)).

In light of this principle and the broader policy concerns identified in *Harbold* and *Francis*, we find that the constraints upon the General Assembly which are embodied in Article III, Section 26 of our state Constitution are indeed relevant to a municipality's appropriations, as is the more facially apposite restraint contained in Article IX, Section 9. Just as the Constitution forbids the General Assembly from allocating extra compensation to public employees already covered by a contract of employment or from authorizing a municipality to appropriate money for an individual, so municipalities, being creatures of the sovereign, should be likewise constrained.[6]

Thus, we hold that the principles embodied in Article III, Section 26's circumscription of the General Assembly's legislative authority relative to the appropriation of funds from the state treasury apply with equal force to municipalities as regards the appropriation of funds from local treasuries. Accordingly, the order of the Commonwealth Court is affirmed.

---

**6.** Article IX, Section 2 of the state Constitution provides that "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." Notably, Leetsdale is not among the Allegheny County boroughs that have adopted home rule charters. *See* 302 Pa.Code §§ 41.1–101–51.24–2412. We need not decide whether the existence of a home rule charter would warrant a different result. *See, e.g., In re Petition to Recall Reese*, 542 Pa. 114, 665 A.2d 1162 (1995) (observing that home rule municipality's exercise of power is presumed valid absent specific constitutional or statutory limitation).