**COUNTY OF MERCER, Mercer County Board of Commissioners, Appellants**

v.

**Thomas W. AMUNDSEN, Mercer County Controller.**

Commonwealth Court of Pennsylvania.

Argued May 4, 2005.

Decided July 13, 2005.

Mark A. Longietti, Sharon, for appellants.

Donald R. McKay, Hermitage, for appellee.

Lewis P. McEwen, Grove City, for amicus curiae, Woodland Place.

BEFORE: COLINS, President Judge, McGINLEY, Judge, PELLEGRINI, Judge, FRIEDMAN, Judge, COHN JUBELIRER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge SIMPSON.

This is an appeal from a judgment in mandamus which essentially determined the Mercer County Controller need not disperse part of a loan to the former County nursing home. The Court of Common Pleas of Mercer County (trial court)[1] determined that the Mercer County Board of Commissioners (Commissioners) was not authorized to make the loan under The County Code (Code).[2] The central issue is whether the express authority to make an appropriation includes the power to loan money.

The facts underlying this controversy are stipulated. Mercer County is a fifth class county with the Commissioners as the governing body. Thomas W. Amundsen is the Controller of Mercer County.

Woodland Place was organized as a Pennsylvania non-profit corporation in 1997 to give medical care to dependents of the County without discrimination. On January 1, 1998, Woodland Place purchased the Mercer County nursing home facilities, collectively known as the Living Center and Sunbridge, from the County.

The Purchase and Sale Agreement provided that Woodland Place would use commercially reasonable efforts to cause not less than 80% of its occupied beds to be occupied by County residents who are eligible for a governmental program such as Medicare/Medicaid "which is designed to fund the cost of nursing care for the medically and financially indigent." Stipulated Facts, No. 6; Reproduced Record (R.R.) at 63a. In addition, the Agreement provided that Woodland Place would "meet any obligations of the county imposed by Federal or State law to provide necessary services to the indigent of the county." *Id.*

Prior to the sale, the County nursing home experienced operating losses, and these continued after the sale to Woodland Place. Stipulated Facts, No. 4; R.R. at 63a, 67a; R.R. at 129a–31a. In addition,

---

1. Senior Judge Harold A. Thompson, Jr., presided by special designation.

2. Act of August 9, 1955. P.L. 323, *as amended,* 16 P.S. §§ 101–2399.73.

the facilities purchased by Woodland Place were in a state of deterioration. Stipulated Facts, No. 5; R.R. at 63a. Extensive renovations ensued. Stipulated Facts, No. 12; R.R. at 64a.

Despite a restructuring of debt in 2002 and a grant from the County Commissioners' Association of Pennsylvania, Woodland Place's ability to meet its required payments and complete renovations became questionable. In an attempt to deal with the situation, a majority of the Commissioners approved a loan to Woodland Place in the principal amount of $1,000,000. In August 2004, the Commissioners submitted to the Controller a payment request in the amount of $304,050 against that loan amount. The next day the Controller disapproved the payment, stating that "this fiscal transaction is not authorized by law" and returned it unpaid to the Board. The Controller continued to refuse to make the disbursement even after further notification from the Commissioners.

Section 1752 of The County Code, 16 P.S. § 1752, requires an order of court directing a controller to approve payment under these circumstances.[3] Therefore, the Commissioners filed a complaint in mandamus and a motion for preemptory judgment.

After hearing, the trial court denied the Commissioners' motion for preemptory judgment. Later, it entered judgment for the Controller. In its opinion, the trial court concluded that The County Code does not grant the Commissioners the power to make the loan to Woodland Place either expressly or by necessary implication. Among other statutory provisions, the trial court examined Section 2169 of The County Code, 16 P.S. § 2169, which authorizes appropriations to non-profit corporations organized to give medical care to dependents of the county. The trial court concluded that while the Commissioners are empowered to make annual appropriations to support certain institutions, the power to lend is not included. Reproduced Record (R.R.) at 92a.

After timely appeal to this Court, the Commissioners argue the trial court committed an error of law.[4] In particular, the Commissioners rely on § 2169 of The County Code. They contend the County has the power to make an appropriation to Woodland Place and by necessary and fair implication, the subject loan.[5]

The Controller relies on two tenets of statutory construction espoused by the trial court: political subdivisions have no inherent powers and may do only those things which the General Assembly has expressly or by necessary implication placed in their power; and, any fair, reasonable doubt as to the existence of power

---

**3.** Section 1752 of The County Code, 16 P.S. § 1752, provides:

If the controller does not approve a claim, bill or demand presented to him, he shall within thirty days forward it to the county commissioners together with his notice that he has refused to approve the same and his reasons therefor. The county commissioners shall consider the claim, bill or demand and, if they consider that it should be paid by the county, they shall so notify the controller. If the controller thereafter continues to refuse his approval no payment shall be made thereon by the county except pursuant to an order of court upon a proper issue thereto directing the controller to approve payment.

**4.** The Commissioners' arguments are reinforced by *amici curiae*, the County Commissioners' Association of Pennsylvania and Woodland Place.

**5.** The Commissioners also rely on § 2164 of The County Code, 16 P.S. § 2164, which permits counties to use funds to care for dependents not otherwise cared for. Because of our resolution of the other issue raised, we need not resolve this argument.

in a political subdivision is resolved against its existence. *Denbow v. Borough of Leetsdale,* 556 Pa. 567, 729 A.2d 1113 (1999). The Controller notes that the statutory sections upon which the Commissioners rely refer to appropriations, not loans.

 Mandamus is an extraordinary writ and is a remedy used to compel performance of a ministerial act or a mandatory duty. *Council of City of Philadelphia v. Street,* 856 A.2d 893 (Pa.Cmwlth.2004). A ministerial act is defined as one which a public officer is required to perform upon a given state of facts in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed. *Id.* In order to obtain a writ of mandamus, the proponent must demonstrate: 1. a clear legal right for the performance of the ministerial act or mandatory duty; 2. a corresponding duty in the appellant to perform the ministerial act or mandatory duty; and, 3. the absence of any other appropriate or adequate remedy. *Id.*

The error in the Controller's position, which was accepted by the trial court, arises from a misunderstanding of the term "appropriation." The Controller assumes this means an absolute grant or gift, without any conditions or restrictions. However, the term "appropriation" is generic, describing a process and not specifying a form. The term embraces the action taken by the Commissioners here.

Section 2169 of The County Code, 16 P.S. § 2169, provides (with emphasis added):

> *The commissioners of each county of the fourth, fifth, sixth, seventh or eighth class shall have the power to make annual appropriations from the funds of the county* for the support of any public

institution operated, or *to any nonprofit corporation organized, to give medical care to the dependents* and children *of the county without discrimination* as to membership in any organization or as to race or sect.

There is no dispute that the purpose of the loan in question meets this statutory requirement. The only dispute is whether the form of the assistance comports with this enabling provision.

 Because the term "appropriation" is not otherwise defined in The County Code, we look to its common and approved usage. 1 Pa.C.S. § 1903. Our Supreme Court defines "appropriation" to mean "a designation of money raised by taxation to be withdrawn from the public treasury for a specifically designated purpose." *Shapp v. Sloan,* 480 Pa. 449, 466, 391 A.2d 595, 603 (1978), *appeal dismissed sub nom. Thornburgh v. Casey,* 440 U.S. 942, 99 S.Ct. 1415, 59 L.Ed.2d 630 (1979) (citations omitted); *Commonwealth v. Perkins,* 342 Pa. 529, 532, 21 A.2d 45, 48 (1941), *affirmed per curiam,* 314 U.S. 586, 62 S.Ct. 484, 86 L.Ed. 473 (1942). This Court defines "appropriation" as:

> The act by which the legislative department of government designates a particular fund, or sets aside a specified portion of the public revenue or of the money in the public treasury, to be applied to some general object of governmental expenditure, or to some individual purchase or expense.... The legislative designation of a certain amount of money as being set aside, allotted, or assigned for a specific purpose....

*Common Cause of Pennsylvania v. Commonwealth,* 668 A.2d 190, 205 (Pa.Cmwlth. 1995) (*en banc,* citations omitted), *affirmed,* 544 Pa. 512, 677 A.2d 1206 (1996); *accord, Street.* In sum, an appropriation is

a process by which a legislative body may authorize, designate, allot or set aside monies for a purpose authorized by law. *See Common Cause.* None of these approved definitions restricts the form in which the public money is applied.

■ The expenditure proposed here meets these common and accepted definitions. Clearly, the loan is made from public moneys and is set aside for an authorized public purpose, for the support of a nonprofit corporation organized to give medical care to dependents of a county. We therefore conclude that the loan is expressly authorized by Section 2169 of The County Code and that disbursement should be made.

These conclusions are consistent with provisions of the Constitution of the Commonwealth of Pennsylvania. Two provisions pertaining to appropriations potentially apply. First, Article III, Section 29, entitled "Appropriations for public assistance," provides (with emphasis added):

> No appropriation shall be made for charitable, educational or benevolent purposes to any person or community nor to any denominational and sectarian institution, corporation or association: Provided, *That appropriations may be made* for pensions or gratuities for military service and to blind persons twenty-one years of age and upwards and *for assistance* to mothers having dependent children and *to aged persons without adequate means of support* and in the form of scholarship grants or loans for higher educational purposes to residents of the Commonwealth enrolled in institutions of higher learning except that no scholarship, grants or loans for higher educational purposes shall be given to persons enrolled in a theological seminary or school of theology.

This provision refers to appropriations in various forms, including pensions, gratuities, assistance, scholarship grants and loans. This provision does not apply solely to the Legislature and applies alike to governmental agencies created by the Legislature. *Schade v. Allegheny County Inst. Dist.*, 386 Pa. 507, 126 A.2d 911 (1956).

Second, Article IX, Section 9, relating to local government and entitled "Appropriation for public purposes," provides (with emphasis added):

> The General Assembly shall not authorize any municipality or incorporated district to become a stockholder in any company, association or corporation, or to obtain or appropriate money for, or to loan its credit to, any corporation, association, institution or individual. *The General Assembly may provide standards by which municipalities* or school districts *may give financial assistance or lease property to public service,* industrial or commercial enterprises *if it shall find that such assistance or leasing is necessary to the health, safety or welfare of* the Commonwealth or *any municipality* or school district. *Existing authority of any municipality or incorporated district to obtain or appropriate money for, or to loan its credit to, any* corporation, association, *institution* or individual, *is preserved.*

This provision refers to obtaining or appropriating money for, or loaning credit to an institution for a public purpose. The provision also references giving financial assistance or leasing property to public service.

Taken together, these constitutional provisions illustrate some of the forms of an appropriation to benefit indigent persons with medical needs. While the Pennsylvania Constitution places limits on the purposes for these appropriations, it does not limit either the form of or the conditions upon such an appropriation.

Our conclusions are also consistent with the only judicial decision touching the issue, *Commonwealth v. Bell*, 35 D & C 146 (Com.Pl.Clearfield County, 1939), a case persuasive if not precedential. In *Bell*, a resident obtained a grant for public assistance but did not repay the amounts received. The county brought suit to obtain a lien. One of the defenses invoked the previously referenced provision of the Pennsylvania Constitution pertaining to appropriations for public assistance.[6] The trial court rejected an argument similar to the one made here, that the grant was constitutional but the condition of repayment was not. In rejecting the argument, the trial court said, *Id.* at 152–53 (with emphasis added):

> The argument is made that this language does not contemplate a loan but assistance of the same nature as a pension or gratuity; that is, that the grant was an outright gift and could not be the subject of recovery. The argument loses sight of several things which render it completely unsound.... *[T]he limitation is upon the power of the legislature to make the grant and not upon its power to place conditions or restrictions upon the acceptance or receipt of a grant.* The position argued for amounts to this, that the recipient contends the grant itself is constitutional and he has accepted its benefits accordingly, but contends that the conditions which the legislature placed upon his receiving its benefits are unconstitutional. This would seem to be a complete distortion of the language of the constitutional restriction. *Nowhere does it say that the legislature, in providing for assistance or even pensions and gratuities, may not prescribe conditions; nowhere is*

*there any requirement that such assistance must be entirely in the nature of a gift rather than a loan or advance. The well-understood purpose of this section of the Constitution was to place a limitation upon the expenditure of public money. It is not contended here that the expenditure of public money in these grants of assistance was improper under these constitutional provisions.* We are completely at a loss to see how the question whether the recipient is liable out of such private property as he may own to repay such assistance is affected by this limitation upon the expenditure of the public funds.

We agree with this analysis. The referenced constitutional and statutory provisions limit the purpose of the appropriation in question. However, neither the Pennsylvania Constitution nor The County Code limits the form of such an appropriation. Also, neither the Pennsylvania Constitution nor The County Code limits the power to place conditions or restrictions on such an appropriation, such as gradual repayment. The trial court fell into error when it concluded otherwise.

For the forgoing reasons, we conclude the Commissioners established a clear right to mandamus relief. Therefore, we reverse the trial court.

### ORDER

AND NOW, this 13th day of July, 2005, the Order of the Court of Common Pleas of Mercer County, dated November 16, 2004, granting judgment in mandamus, is **REVERSED.** The case is **REMANDED** for the entry of judgment in favor of the Mercer County Board of Commissioners.

Jurisdiction relinquished.

---

**6.** The constitutional provision addressed in *Bell*, Article III, Section 18, was later renumbered as Article III, Section 29, previously quoted. On November 5, 1963, the last phrase relating to scholarships was added.

FRIEDMAN, J., dissents and files opinion in which PELLEGRINI and LEAVITT, JJ. join.

### DISSENTING OPINION BY Judge FRIEDMAN.

I respectfully dissent. The majority reverses the November 16, 2004, order of the Court of Common Pleas of Mercer County, concluding that section 2169 of The County Code [1] (Code) authorizes the Mercer County (County) Board of Commissioners (Commissioners) to make a $1,000,000 loan to Woodland Place, a non-profit corporation organized to give medical care to dependents of the County. For the following reasons, I disagree.

Section 2169 of the Code provides, in pertinent part, as follows:

**Contributions** for medical care. The commissioners of each county ... shall have the power to make **annual appropriations** from the funds of the county for the support of any public institution operated, or to any nonprofit corporation organized, to give medical care to the dependents and children of the county without discrimination....

16 P.S. § 2169 (emphasis added).

First, section 1924 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1924, states that the headings prefixed to sections of a statute may be used to aid in the construction thereof. Here, the heading prefixed to section 2169 of the Code indicates that the provision authorizes "contributions" for medical care. A "contribution" is something **given.** *See* Webster's Third New International Dictionary 496 (1993) (defining the word "contribution" as something "contributed" and "contribute" as "give"). The word does not refer to the making of a loan.

Second, the goal of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Section 1921(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(a). Words and phrases shall be construed according to their common and approved usage, but technical words and phrases shall be construed according to their peculiar or appropriate meaning. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a). When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C.S. § 1921(b).

Here, section 2169 authorizes the Commissioners to make "annual appropriations." In this context, the word "appropriation" refers to a legislative body's act of setting aside a sum of money for a public purpose. Black's Law Dictionary 110 (8th ed. 2004). The adjective "annual" means "yearly." Webster's Third New International Dictionary 88 (1993). Thus, on a **yearly** basis, the Commissioners may **set aside a sum of money** to **give** to Woodland Place. In my view, the words of section 2169 of the Code are clear and free from all ambiguity, and the words do **not** authorize the making of a loan.

Accordingly, I would affirm.

Judge PELLEGRINI and Judge LEAVITT join in this dissent.

---

**1.** Act of August 9, 1955, P.L. 323, added by the Act of September 19, 1961, P.L. 1495, *as amended,* 16 P.S. § 2169.