Alton Glenson Knauer, Appellant, *v.* Commonwealth of Pennsylvania, Appellee.

Argued January 9, 1975, before Judges CRUMLISH, JR., ROGERS and BLATT, sitting as a panel of three.

*Richard Kirshner*, with him *Gene Locks*, for appellant.

*Albert R. Subers*, for appellee.

OPINION BY JUDGE ROGERS, February 10, 1975:

Alton Glenson Knauer has appealed from an order of the Court of Common Pleas of Montgomery County dismissing his appeal from an order of a Justice of the Peace finding him guilty of violating an ordinance of Upper Gwynedd Township and ordering him to pay a fine of $25.00 and costs of $11.00.

The court below, based upon the record made before it in a trial de novo, found that the defendant, an employee on strike, was, on February 12, 1971, in an orderly picket line at the entrance of his employer's premises; that the defendant came into contact with a motor vehicle operated by another employee who, under direction of a township police officer, was departing the employer's premises; and that the defendant then went to the window of the driver's vehicle, reached in and "hit the operator's head, knocking his hat off." The court below in both its opinion and order characterized the defendant's actions as an assault and battery.

The ordinance which Knauer was charged with violating was adopted by Upper Gwynedd, a First Class Township, in 1964, is entitled "An Ordinance Regulating Picketing Within The Township of Upper Gwynedd And Providing Penalties For Violation Of The Provisions Thereof" and renders unlawful the engaging in picketing by force, violence, duress, breach of the peace or threat thereof; engaging in picketing in such a manner as to prevent ingress and egress to or from any premises; engaging in picketing in such a manner as to obstruct, prevent, or interfere with the use of public streets by other persons; and engaging in picketing other than in a reasonable and peaceful manner.[1]

---

1. The text of the Ordinance is as follows:

Be it ordained and enacted by the Commissioners of Upper Gwynedd Township and it is hereby ordained and enacted by authority of the same:

SECTION 1. For purposes of this ordinance, the word "picketing" shall mean the act of standing upon or patrolling any public street, sidewalk or any other public place where persons may lawfully assemble, by one or more persons for the purpose of:

a. Persuading other persons to cease patronizing, contracting with, employing, or leaving the employ of any person or persons, or

b. Giving publicity to, or communicating information regarding the existence, facts, or merits of a labor dispute or other controversy.

SECTION 2. It shall be unlawful:

a. To engage in picketing by force, violence, duress, breach of the peace or threat of any of the foregoing;

b. To engage in picketing in such a manner as to prevent ingress or egress to or from any premises;

c. To engage in picketing in such a manner as to obstruct, prevent, or interfere with the free or unobstructed use of any public street or sidewalk by other persons;

d. To engage in picketing other than in a reasonable and peaceful manner.

SECTION 3. Any person violating any of the provisions of this Ordinance shall be charged with a summary offense before a justice of the peace, and upon conviction thereof shall be required to pay a fine in an amount not to exceed $100.00 and in default

The appellant raises a number of questions concerning the statutory and constitutional validity of the ordinance and the procedures below which it is not necessary to discuss because we have concluded that the ordinance is in excess of the powers granted the township by the Legislature, and that Knauer's conduct, even if proscribed by a valid ordinance, was not one within the power of the township to prosecute as a violation of a municipal ordinance.

It is fundamental that municipal corporations are creatures of the State and that the authority of the Legislature over their powers is supreme. *Shirk v. Lancaster City*, 313 Pa. 158, 169 A. 557 (1933). Municipal corporations have no inherent powers and may do only those things which the Legislature has expressly or by necessary implication placed within their power to do. *Gagliardi v. Ambridge Borough*, 401 Pa. 141, 163 A.2d 418 (1960). As expressed by Judge WOODSIDE, whose opinion was adopted by our Supreme Court in *Kline v. Harrisburg*, 362 Pa. 438, 443, 68 A.2d 182, 184-185 (1949) : "Municipalities are not sovereigns. Their powers are limited. It has been said that: 'Nothing is better settled than that a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable. Any fair, reasonable doubt as to the exist-

---

of payment thereof, shall be imprisoned for a period not exceeding ten days.

SECTION 4. *Severability*—If any section, subsection, sentence, clause, phrase or portion of this Ordinance is for any reason held invalid or unconstitutional by any Court of competent jurisdiction, such portion shall be deemed a separate, distinct or independent provision, and such holding shall not affect the validity of the remaining portions thereof.

ence of power is resolved by the courts against its existence in the corporation, and therefore denied.'" It follows that unlimited police powers are not conferred on subdivisions of State government by a general welfare clause or a general grant of powers clause. *See Handloff,* Self Government of Municipalities, 31 Temple L.Q. at page 243. We have searched in vain in the First Class Township Code, Act of June 24, 1931, P.L. 1206 et seq., *as amended,* 53 P.S. §55101 et seq., for a legislative grant of power to such townships to regulate picketing. Section 1502 of the Code, 53 P.S. §56502 through §56557, grants First Class Townships the power to provide regulations on many subjects, from airports to water courses, without mention of picketing. The ordinance before us was therefore unauthorized and must fall, as must also, of course, this proceeding brought to enforce it.

We feel constrained, however, to mention Section 1502, cl. IX, 53 P.S. §56509, of the First Class Township Code which confers the power "to define and prohibit disorderly practices within the limits of the township." Disorderly conduct was defined and made a summary offense by Section 406 of The Penal Code of 1939, Act of June 24, 1939, P.L. 872, *as amended,* 18 Pa. C.S.A. App. §4406.[2] Whether the grant by the Legislature to a municipality of the power to define and prohibit disorderly conduct or practices is sufficient to justify the subdivision in itself attempting to penalize the identical offense of disorderly conduct as defined in The Penal Code or any other offense which is punishable by statute or common law, has been the subject of considerable judicial discussion, the most comprehensive and helpful of which is Judge SATTERWAITE'S opinion in *Commonwealth v. Barnhardt,* 7 Bucks 78, 12 D&C.2d 255 (1957). The

---

2. The Crimes Code, 18 Pa. C.S. §101 et seq., effective June 6, 1973, has no application to this proceeding. Disorderly conduct remains, however, a statutory offense. 18 Pa. C.S. §5503.

weight of authority, including that of the case just cited, is that such grant of power is insufficient to justify such enactments. We agree with that view and so hold.[3] Since Knauer's actions as described in the lower court's findings and as denominated by that court was an assault and battery, punishable by Act of Assembly, they were not, and could not be, punishable as violations of a township ordinance.

Finally, even were we able to find in some general grant of power to First Class Townships suggesting authority for regulations such as those under consideration, we would have great difficulty in concluding that the Legislature had not intended, contrary to such general grant, to preempt the field at least with regard to labor disputes by the Labor Anti-Injunction Act, Act of June 2, 1937, P.L. 1198, 43 P.S. §206(a), and the Pennsylvania Labor Relations Act, Act of June 1, 1937, P.L. 1168, *as amended* 43 P.S. §211.1 et seq. *See United Tavern Owners of Philadelphia v. Philadelphia School District*, 411 Pa. 274, 272 A.2d 868 (1971).

Order and Judgment reversed.

---

3. It is noted that we are not here concerned with a borough or a third class city which are empowered to define and prohibit disorderly practices, "notwithstanding any statutes of the Commonwealth upon disorderly conduct and/or disturbing the peace and the penalties therefor." The Borough Code, Act of Feb. 1, 1966, P.L. 1656 (1965), §1202(20), 53 P.S. §46202(20); The Third Class City Code, Act of June 23, 1931, P.L. 932, §2403(55) *as amended* 53 P.S. §37403(55). Quaere, the effect upon these statutes of Supreme Court Rule of Criminal Procedure 51(D) relating to summary cases reading: "When the same conduct is prescribed under an Act of Assembly and a local ordinance, the charge shall be brought under the Act of Assembly and not under the local ordinance." Rule 51(D) became effective January 1, 1974.