## Croydon Fire Company v. Bristol Township Commissioners

**158**

*Edward D. Foy, Jr.,* for plaintiffs.
*Leonard B. Sokolove,* for defendants.

KELTON, *J.,* December 19, 1980—The single issue in this declaratory judgment action is whether or not it is proper for the Bristol Township Commissioners to expend a portion of the funds generated from their three mill fire tax for the payment of premiums for volunteer firemen's workmen's compensation insurance. Five fire companies of the township contend that such compensation insurance costs must be paid out of the general funds of the township and not from the proceeds of the special fire tax.

We hold that the expenditure from the special fire fund is proper.

This action originated with the filing of a petition for declaratory judgment under 42 Pa.C.S.A. §§7531-7541 by Croydon, Edgely, Levittown No. 2, Newportville and Third District fire companies against the Board of Commissioners of Bristol Township. After answer thereto and a brief hearing, it was determined by the parties that the facts were not substantially in dispute. All parties agreed that the fire company petitioners operate within the Township of Bristol, that the Board of Township Commissioners has levied a three mill fire tax for the purposes of building and maintaining suitable places for the housing of fire apparatus, purchas-

ing, maintaining and operating fire apparatus and making appropriations to fire companies within the township. The tax has been enacted under The First Class Township Code of June 24, 1931, P.L. 1206, art. XVII, sec. 1709, as amended, 53 P.S. §56709, subsection Two (hereafter, the fire tax) and the commissioners have been paying the volunteer firemen's premiums out of the revenue funds obtained thereunder.

The township's budget figures of estimated revenues and expenditures from the fire protection fund for calendar year 1980 are as follows:

*Revenue*

| | |
|---|---|
| The Fire Tax | $276,000 |
| Insurance Recoveries | 0 |
| Foreign Fire Insurance | 42,500 |
| Prior Year's Balance | 27,309 |
| | $345,809 |

*Expenditures*

| | |
|---|---|
| Company Expenses | $ 2,500 |
| Printing | 0 |
| Telephone | 1,900 |
| Refunds | 0 |
| Workmen's Compensation Insurance | 36,000 |
| Contracted Services | 0 |
| Contributions - | |
| Fire Companies | 251,910 |
| Equipment | 0 |
| Rescue Squads | 1,000 |
| Pension Distribution | 42,500 |
| Contingency | 10,000 |
| Books & Materials | 0 |
| Surplus | 0 |
| | $345,810 |

At the hearing, counsel advised the court that in the past the township has remitted to the fire companies any surplus amounts left in the fire protection fund. Therefore, *if* the workmen's compensation premiums were paid from the township *general* fund and *if* the special fire tax remains at three mills (a question which we need not decide), the annual contributions to the volunteer companies might increase by approximately $36,000 per annum *if* the township continued its practice of remitting all of the surplus to the companies.

It is clear of course that municipal taxes which have been set apart by statute for particular uses or purposes may not be diverted to other purposes. See, e.g., Com. v. Souder, 172 Pa. Superior Ct. 463, 94 A. 2d 136 (1953), aff'd 376 Pa. 78, 101 A. 2d 693 (1954), and see, also, section 807 of The First Class Township Code which provides that:

"Whenever any moneys are collected in any township for any special purpose and are paid into the hands of the treasurer of such township, it shall be unlawful for such treasurer to apply such moneys, or any part thereof, to any purpose other than that for which such moneys were collected. . . ." Act of June 24, 1931, P.L. 1206, art. VIII, sec. 807, 53 P.S. §55807.

A first class township has no inherent powers and may do only those things which the legislature has expressly or by necessary implication placed within its power to do: Knauer v. Com., 17 Pa. Commonwealth Ct. 360, 332 A. 2d 589 (1975), and Kline v. Harrisburg, 362 Pa. 438, 443, 68 A. 2d 182, 184-185 (1949). As stated in Kline, ". . . a municipal corporation does not possess and cannot exercise any other than the following powers: (1) those granted in express words; (2) those necessarily or

fairly implied in or incident to the powers expressly granted; (3) those essential to the declared objects and purposes of the corporation, not simply convenient but indispensable."

To determine whether the legislature either expressly or by necessary implication has granted the power to use part of the fire tax revenues for compensation premiums, it is necessary to examine various parts of the Township Code and the Pennsylvania Workmen's Compensation Act of June 2, 1915, P.L. 736, 77 P.S. § 1 et seq., and construe them together.

## Township Code—Tax Levies

Under the taxing levying section of The First Class Township Code, the commissioners are authorized to levy taxes,

". . . for the purposes and at the rate hereinafter specified . . . at section 1709:

"One. An annual tax *for general township purposes not exceeding thirty mills,* unless the board of township commissioners by majority action shall, upon due cause shown by resolution, petition the court of quarter sessions, in which case the court may order a rate of not more than five mills . . . to be levied: . . .

"Two. An annual tax *not exceeding three mills* for the purpose of building and maintaining suitable places for the housing of fire apparatus and *for the purpose of purchasing, maintaining and operating fire apparatus and for the purposes of making of appropriations to fire companies within or without the township and of contracting with adjacent municipalities or volunteer fire companies therein for fire protection.* If an annual tax for the purposes specified in this clause

is proposed to be set at a level higher than three mills the question shall be submitted to the voters of the township, and the county board of elections shall frame the question in accordance with the election laws of the Commonwealth for submission to the voters of the township." (Emphasis supplied.)

## Workmen's Compensation Act

The Workmen's Compensation Act, as amended by the Act of December 5, 1974, P.L. 782, sec. 15, 77 P.S. §2031, states that the term *"employee"* for purposes of township workmen's compensation coverage:

". . . *shall also include:*

"(1) *members of volunteer fire departments* or volunteer fire companies who shall be entitled to receive compensation in case of injuries received *while actively engaged as firemen* or while going to or returning from a fire which the fire company or fire department attended or while participating in instruction fire drills in which the fire department or fire company shall have participated or *while repairing or doing other work about or on the fire apparatus* or buildings and grounds of the fire company or fire department upon the authorization of the chief of the fire company or fire department or other person in charge or while answering any emergency calls for any purpose or *while riding upon the fire apparatus* which is owned or used by the fire company or fire department or while performing any other duties of such fire company or fire department as authorized by the municipality or while performing duties imposed by section 15, act of April 27, 1927 (P.L. 465, No. 299), referred to as the Fire and Panic Act. . . ." (Emphasis supplied.)

General Powers of the Commissioners

Article XV of The First Class Township Code provides that the board of commissioners *shall have power:*

"To make regulations within the township or within such limits as may be deemed proper, relative to the cause and management of fires and the prevention thereof; *to purchase or contribute to the purchase of fire engines and fire apparatus* for the use of the township, and to appropriate money to fire companies for the operation and maintenance thereof and for the construction, repair and maintenance of fire company houses; to ordain rules and regulations for the government of such fire companies and their officers, and to regulate the method to be followed in the extinguishment of fires." 53 P.S. §56516.

*"To expend out of the general township fund such amount as may be necessary to secure workmen's compensation insurance for its employes, including volunteer firemen of companies* duly recognized by the township by motion or resolution killed or injured while going to, returning from or attending fires, or while performing any other duties authorized by the township . . . [and also to make contracts for other types of insurance such as liability insurance, fire insurance on township buildings, hospitalization insurance for employees or their dependants or for pensions for various township employees]." 53 P.S. §56563. (Emphasis supplied.)

The fire companies argue that because the code *empowers* the commissioners to pay the volunteer firemen's premiums "out of the general township funds," it necessarily follows that the general fund is the *only* fund which may be so used.

' We do not agree.

For the following reasons, we believe that the fire tax provision of section 1709 of the code, 53 P.S. §56709, now authorizes payment also out of the three mill tax fund by language which is necessarily and fairly implied from the express powers granted.

First, the legislative history of the fire tax provision supports the conclusion that broadly expanded fire company expenditures are now contemplated under that section. As originally enacted in 1931, the township was only authorized to enact a one mill tax for the limited purpose of building and maintaining places for "housing of fire apparatus." In 1951 the fire tax was amended by the Act of January 14, 1951, P.L. 2019, to add "the purpose of purchasing and maintaining fire apparatus." In 1975 the present language was adopted in the Act of July 16, 1975, P.L. 63, to add the purposes of "making appropriations to fire companies within or without the township and of contracting with adjacent municipalities or volunteer fire companies for fire protection." Also in 1975 the authorized millage was increased from two to three mills. Thus the legislative history clearly supports expanded and more flexible use of the fire tax funds.

Second, the very activities which create coverage under the Workmen's Compensation Act, i.e., "repairing or doing work about or on the fire apparatus" or "riding on the fire apparatus" are also necessarily implied under Section Two of the special tax levy, i.e., "maintaining and operating fire apparatus." We conclude that workmen's compensation for employes who maintain and operate fire apparatus is necessarily included as a proper expense of maintenance and operation. Obviously,

fire equipment is maintained by people. If a pump is to be disassembled, cleaned and reassembled, the fireman doing the work is "doing other work . . . on the fire apparatus" under the compensation act and at the same time is "maintaining . . . fire apparatus" under the fire tax levy section. Machines don't repair fire apparatus, people do.

Finally, the fact that "power" is given to use the general funds under the insurance section of the Township Code doesn't mean that power is taken away from some other section. The insurance clause, 53 P.S. §56563, covers *all* types of insurance including workmen's compensation for firemen or nonfiremen, paid or volunteer, property damage, hospitalization, pensions, public liability and group life and accident policies. The word "power" connotes the ability or possibility of acting. In our judgment, we should not write into that section a restriction that *only* the general fund may be used. Otherwise, we would have an anomalous situation that the township would be prohibited under the fire tax section from paying its own township's volunteer firemen's workmen's compensation from the fund while at the same time it would be authorized to pay the special fire tax funds under a contract with an adjacent municipality. Presumably the adjacent municipality would itself have workmen's compensation expense which would be a part of its contract cost.

The decision as to whether these costs should be charged against the fire fund or against the general fund is in our judgment a matter in which discretion is properly vested in the elected commissioners. Compare Uzdilla v. Hanover Township, 39 Luz. L. Reg. 317 (1947) (allocation of fire protection funds).

166

We hold, therefore, that the township is empowered to pay workmen's compensation premiums applicable to plaintiff companies by appropriate charges against the revenues created from the township's three mill special fire tax.

The parties have stipulated that any disposition we make in this case should be applicable solely to calendar year 1981 and future years. Accordingly, we enter the following

## DECLARATORY JUDGMENT

And now, December 19, 1980, it is hereby determined and declared that the Board of Commissioners of the Township of Bristol is authorized and empowered to expend a portion of the funds derived from its special fire tax under 53 P.S. §56709, subsection Two, for the purpose of providing workmen's compensation insurance coverage for covered members of plaintiff companies.