**SCALP LEVEL BOROUGH, Appellant,**

v.

**PAINT BOROUGH.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2002.

Decided April 17, 2002.

Nicholas Banda, Johnstown, for appellant.

Lois Witt Geary, Somerset, for appellee.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and DOYLE, Senior Judge.

OPINION BY Judge COHN.

Scalp Level Borough (Scalp Level) appeals from an order entered by the Court of Common Pleas of Somerset County on August 30, 2000, declaring a November 20, 1990 agreement between Scalp Level and Paint Borough (Paint), allowing Paint to collect sewer rentals directly from residents of Scalp Level whose sewage is transmitted through the sewer lines of Paint, to be valid and enforceable.

Scalp Level is located in Cambria County, which is contiguous to Paint, located in Somerset County. Both are municipal corporations and are members of the Windber Area Authority, which provides sewage treatment for waste generated by the boroughs. Beginning in 1956, Scalp Level entered into an agreement with Paint in which Paint agreed to maintain and repair sewer lines located in Scalp Level and connected to Paint's sewer system in exchange for an annual maintenance fee of $150 and an annual tapping fee of $50.[1] This agreement allowed for the most efficient transmission of sewage from Scalp Level through Paint to the interceptor line of the Windber Area Authority.

On November 20, 1990, Scalp Level and Paint entered into a new agreement allowing Paint to collect a "sewer transmission fee" directly from 44 residents of Scalp Level whose sewage is transmitted through Paint's sewer lines. The agreement also provides, *inter alia*, that Paint is responsible for billing and collection of fees from Scalp Level residents, and that Scalp Level and Paint are responsible for the

---

1. The annual maintenance fee was raised to $200 in 1959.

maintenance, repair and replacement of sewer lines physically located in their respective boroughs. The boroughs operated under this agreement for seven (7) years. However, on January 26, 1998, Scalp Level filed an action for Declaratory Judgment in the Court of Common Pleas of Cambria County arguing that the agreement and the "sewer transmission fee" were illegal and unenforceable. The case was transferred to Somerset County and, after a non-jury trial on June 15, 2000, the court entered an order, dated August 30, 2000, holding the 1990 agreement and fees to be valid and enforceable.[2] Scalp Level filed a post-trial motion requesting judgment notwithstanding the verdict, but the trial court denied the motion on December 18, 2000. On May 7, 2001, the trial court granted Scalp Level leave to file an appeal *nunc pro tunc.*

█ Our scope of review in an appeal from a declaratory judgment action is whether the trial court made findings supported by substantial evidence, committed an error of law, or abused its discretion. *Kennedy v. Upper Milford Township Zoning Hearing Board,* 779 A.2d 1257 (Pa. Cmwlth.2001). The test is not whether we would reach the same result on the evidence presented, but whether the trial court's conclusion can be reasonably drawn from the evidence. *PARC Holdings, Inc. t/a PARC Development, L.P. v. Killian,* 785 A.2d 106 (Pa.Super.2001).

Scalp Level contends, on appeal, that the lower court erred when it concluded that Paint could legally and properly charge and collect sewer rental fees from residents of Scalp Level who are tapped into the Scalp Level sewer lines connected to the Paint sewer system. In other words, Scalp Level argues that *it* had no authority under the Borough Code to enter into an agreement that permitted another borough to collect a "sewer transmission fee" directly from *its* residents.

█ Municipal corporations are creatures of the State and the authority of the Legislature over their powers is supreme. *Denbow v. Borough of Leetsdale,* 556 Pa. 567, 576, 729 A.2d 1113, 1118 (1999) (*quoting Knauer v. Commonwealth,* 17 Pa. Cmwlth. 360, 332 A.2d 589, 590 (1975)) (citations omitted). Consequently, municipal corporations have no inherent powers and may do only those things that the Legislature has permitted them to do. *Id.*

Both Scalp Level and Paint boroughs are municipal corporations whose powers are legislatively authorized by statutory mandate in Sections 1201–1202 of The Borough Code, 53 P.S. §§ 45201–45202.[3] Agreements between boroughs concerning "joint sewers" are permitted under sections 2023 and 2024 of The Borough Code. In particular, Section 2023 states,

[a]ny borough may connect with an existing sewer, owned by any adjacent municipality or township, for sewerage purposes, in the manner prescribed in the following sections of this subdivision of this article.

53 P.S. § 47023. Further, section 2024 states that

[w]henever any borough shall desire to connect with the existing sewer of any

___

**2.** Scalp Level argued before the trial court that the agreement was invalid because it was not properly approved, ratified and adopted by the Borough Council as required in the agreement itself. However, the trial court was convinced, based on production of additional evidence, that the absence of evidence of formal action was "merely oversight." This issue was only mentioned in passing in Scalp Level's brief on appeal, and not addressed in Paint's brief at all.

**3.** Act 1966, Feb. 1, P.L. (1965) 1656, *as amended.*

adjacent municipality or township, and no agreement, either upon the basis of a rental payment for the use of an existing sewer or a division of the cost of the construction or maintenance thereof, has been reached between such borough and the adjacent municipality or township, an application shall be made by council to the court of quarter sessions of the county, setting forth that fact.

53 P.S. § 47024. Thus, it is clear that Scalp Level is authorized by The Borough Code to connect to Paint's existing sewer and to enter into an agreement for provision of such services.

■ Paint is also authorized to charge a rental fee for use of its sewer lines. Section 2061 of The Borough Code states, in pertinent part

[w]henever any borough shall have constructed any sanitary sewer, ..., the council of such borough may provide, by ordinance, for the collection of an annual rental or charge, for the use of such sanitary sewer, ..., *from the owner of property served by it ...*

53 P.S. § 47061 (emphasis added). We hold that Paint can collect sewer rental fees directly from Scalp Level residents because they are "owner[s] of property served by [Paint's sewer lines]." Our construction of the phrase "owner of property" to encompass not just Scalp Borough, which owns the lines, but the residents who own the property where the lines run, is supported by Section 2062 of The Bor-

ough Code, 53 P.S. § 47062, which specifically deals with how to calculate rental fees and allows for them to be "apportioned equitably among the several properties served by said sewers...." The phrase "several properties" clearly contemplates charging not only a municipality directly, but alternatively, charging that municipality's residents directly IF they receive a benefit, and we hold that the residents in question here receive one.[4] Phrased differently, under this statutory provision, no distinction is made between a direct connection to a main line running through municipal property and an indirect connection running to a resident's home. Accordingly, because we hold that the boroughs were statutorily permitted to enter into this agreement, we reject Scalp's argument.

Further, the statutory provision relied on by Scalp Level to prohibit Paint from charging a "sewer transmission fee," Section 2031 of The Borough Code, 53 P.S. § 47031, permits a borough that maintains and operates a "sewer system and sewage purification or treatment works," to charge a fee to municipalities or persons outside the limits of such borough for its services. However, because Paint does not maintain or operate a sewage purification system or treatment works, this Section does not apply and cannot be used by Scalp Level to bolster its argument.[5]

Accordingly, for the reasons outlined in this opinion, we affirm the order of the trial court.

---

**4.** It is certainly true that in order to be assessed rental fees, the individual to be charged must obtain some benefit. *Ack v. Carroll Township Authority,* 661 A.2d 514, 517 (Pa.Cmwlth.1995), *petition for allowance of appeal denied,* 543 Pa. 731, 673 A.2d 336 (1996).

**5.** Scalp Level also asserts that it is inequitable for certain residents of Scalp Level who use Paint's sewer collection lines to pay a higher

fee than residents of Scalp Level who do not use the Paint sewer lines. However, the record is clear that residents of Paint and residents of Scalp Level who use the Paint sewer lines pay the same rates. The fact that Scalp Level does not independently charge these 44 residents maintenance and transmission fees for use of its own lines is not the result of the 1990 agreement between the boroughs and, therefore, of no consequence in this appeal.

## ORDER

NOW, April 17, 2002, the order of the Court of Common Pleas of Somerset County in the above-captioned matter is hereby affirmed in accordance with the foregoing opinion.