IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hamilton Township, : 
               Appellant : 
                : No. 1575 C.D. 2013
          v. : No. 1576 C.D. 2013
                : 
Hensco, Ltd. : Argued: June 16, 2014


BEFORE: HONORABLE BERNARD L. McGINLEY, Judge
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                      FILED: August 5, 2014


      Hamilton Township (Township) appeals from the August 8, 2013 order of the Court of Common Pleas of Adams County (trial court), dismissing the Township's municipal lien under the Municipal Claim and Tax Lien Act[1] (the MCTLA) against property owned by Hensco, Ltd. (Hensco) for expenses and fees that the Township charged Hensco to tap into its sewer line.[2] We affirm.

      The facts and procedural history of this case, taken from the uncontested facts in the pleadings, (Trial court op. at 1 n.1), may be summarized as follows.

---

[1] Act of May 16, 1923, P.L. 207, *as amended*, 53 P.S. §§7101-7505.

[2] Because the common pleas court assigned two docket numbers to this matter, the Township filed two separate notices of appeal from the trial court's August 8, 2013 order, which we consolidated by order dated November 8, 2013.

Hensco owns property located at 6110 York Road, in the Township, Adams County (Property). Although the Property and other nearby properties were located within the Township's borders, the Township did not have sewer service in the area. On November 20, 1984, the Township entered into an agreement (1984 Agreement) with Oxford Township, wherein Oxford Township was designated as the Township's "agent" and assumed the obligation to collect and transport the Property's sewage. Thereafter, Hensco connected to the Oxford Township sewer line and paid Oxford Township approximately $40,000.00 to cover the applicable tapping fees. Hensco continued to use the Oxford township sewer line and paid monthly usage fees. (Trial court op. at 1-2, 9.)

In 2000, the Township instituted plans to construct a sewer system that would encompass the area where the Property was located. On December 4, 2001, the Township and Oxford Township entered into an agreement (2001 Agreement) that essentially terminated the 1984 Agreement and required the Property to disconnect from the Oxford Township sewer line. On January 7, 2002, the Township passed an ordinance (2002 Ordinance) requiring the Property and others similarly situated to connect to the Township's sewer line. Upon receiving notice from the Township, Hensco connected to the Township's sewer line after having been connected to the Oxford Township sewer line for nearly 18 years and paying a $40,000.00 tapping fee. The Township then invoiced Hensco for tapping fees into the Township's line in the amount of $56,000.00 for 33 Equivalent Dwelling Units (EDUs) at $1,700.00 per EDU.[3] (*Id.* at 3-4, 9.)

---

[3] "An EDU represents the flow of wastewater converging into the sewer system. For example, if the Township uses 200 gallons per day as the equivalent of one EDU and a proposed McDonald's would generate 600 gallons of wastewater per day, the McDonald's would contribute **(Footnote continued on next page…)**

2

On December 4, 2003, the Township filed a municipal lien in the amount of $56,128.00 against the Property for unpaid tapping fees and costs. On December 31, 2010, the Township filed a praecipe to issue a writ of *scire facias*, indicating that the lien has not been paid and notifying Hensco to file an affidavit of defense.[4] On January 28, 2011, Hensco filed an affidavit of defense, asserting that the 2002 Ordinance authorizing the tapping fees was improperly adopted and/or procedurally defective because the cost figures used to calculate the tapping fees were not available for public inspection prior to the passage of the 2002 Ordinance. Hensco further argued that the Township lacked the legal authority to charge it tapping fees because Hensco was an "existing customer" under section 502(a) of the Second Class Township Code (Code),[5] 53 P.S. §67502(a), and former section 4(B)(t)(E)(II) of the Municipality Authorities Act of 1945 (Authorities Act).[6] (Trial court op. at 5.)

---

**(continued…)**

three EDUs of flow into the sewer system." *Chateau Woods, Inc. v. Lower Paxton Township*, 772 A.2d 122, 123 n.2 (Pa. Cmwlth. 2001).

[4] "A *scire facias* proceeding is an action in rem. The issuance of a writ of *scire facias* is an original process and serves the dual purposes of a writ of summons and a complaint. The purpose of a *scire facias* proceeding is to warn the owner of the existence of a claim so that the owner may make any defenses known and show why the property should not be under judicial subjection of a municipal lien. The property owner or any person allowed to intervene in the *scire facias* proceeding may file an affidavit of defense to the municipal claim." *N. Coventry Township v. Tripodi*, 64 A.3d 1128, 1133 (Pa. Cmwlth. 2013) (citations omitted).

[5] Act of May 1, 1933, P.L. 103, added by the Act of November 9, 1995, P.L. 350, *as amended,* 53 P.S. §§65101-68701.

[6] Formerly, Act of May 2, 1945, P.L. 382, *as amended*, 53 P.S. §306(4)(B)(t)(E)(II). In 2011, the Authorities Act was repealed by the Act of June 19, 2011, P.L. 287; *see now* 53 Pa.C.S. §§5601-5623. The parties do not dispute that former section 4(B)(t)(E)(II) of the Authorities Act applies here.

**(Footnote continued on next page…)**

By order dated August 8, 2013, the trial court dismissed the Township's municipal lien. In its opinion, the trial court noted that the dispute involved an interpretation of section 502(a) of the Code and former section 4(B)(t)(E)(II) of the Authorities Act. In pertinent part, section 502(a) of the Code permits a second class township like the Township here to adopt an ordinance requiring property owners to connect with and use a sanitary sewer system; section 502(a) of the Code also allows a township to collect "a tapping fee and other similar fees, as enumerated and defined by clause (t) of subsection B of section 4 of the [Authorities Act]." 53 P.S. §67502(a).[7] Pursuant to former section 4(B)(t)(E)(II) of the Authorities Act:

**(continued…)**

---

[7] In its entirety, section 502(a) of the Code states:

Sanitary sewer connections

(a) The board of supervisors may by ordinance require adjoining and adjacent property owners to connect with and use the sanitary sewer system, whether constructed by the township or a municipality authority or a joint sanitary sewer board. In the case of a sanitary sewer system constructed by the township pursuant to either section 2501 or 2516, the board of supervisors may impose and charge to property owners who desire to or are required to connect to the township's sewer system a connection fee, a customer facilities fee, a tapping fee and other similar fees, as enumerated and defined by clause (t) of subsection B of section 4 of the act of May 2, 1945 (P.L. 382, No. 164), known as the "Municipality Authorities Act of 1945," as a condition of connection to a township-owned sewer collection, treatment or disposal facility. If any owner of property adjoining or adjacent to or whose principal building is within one hundred and fifty feet from the sanitary sewer fails to connect with and use the sanitary sewer for a period of sixty days after notice to do so has been served by the board of supervisors, either by personal service or by registered mail, the board of supervisors or their agents may enter the property and construct the connection. The board of supervisors shall

**(Footnote continued on next page…)**

4

> **No tapping fee may be based upon or include the cost of**
> expanding, **replacing**, updating or upgrading **facilities
> servicing existing customers** in order to meet stricter
> efficiency, environmental, regulatory or safety standards or
> to provide better service to or meet the needs of existing
> customers.

*Formerly* 53 P.S. §306(4)(B)(t)(E)(II) (emphasis added).[8]

Applying these statutory provisions, the trial court rejected the Township's argument that Hensco was not an "existing customer" because the Township's sewer line is an entirely new system. The trial court found that the 1984 Agreement created an agency relationship between the Township and Oxford Township; Oxford Township (as the agent) had no authority to allow the Property to

---

**(continued…)**

> send an itemized bill of the cost of construction to the owner of the
> property to which connection has been made, which bill is payable
> immediately. If the owner fails to pay the bill, the board of
> supervisors shall file a municipal lien for the cost of the construction
> within six months of the date of completion of the connection.

53 P.S. §67502(a).

[8] After the Township passed the 2002 Ordinance authorizing tapping fees and filed its municipal lien in 2003, former section 4(B)(t)(E)(II) was amended by Act 57 of 2003, effective June 30, 2005, to add the word "only" before the term "existing customers." *See* 53 Pa.C.S. §5607(d)(24)(i)(C)(V)(b).

Section 1926 of the Statutory Construction Act of 1972, 1 Pa.C.S. §1926, provides that "[n]o statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly." There is nothing in the legislation to suggest that the General Assembly intended that the 2005 amended version of former section 4(B)(t)(E)(II) be applied retroactively. Further, for purposes of retroactive application, the Township makes no argument that the amended language is procedural as opposed to substantive and, accordingly, we will not address this issue. *See Van Duser v. Unemployment Compensation Board of Review*, 642 A.2d 544, 548 n.3 (Pa. Cmwlth. 1994) ("Issues not briefed are waived.").

connect to its sewer lines without the Township's express authorization; the Township (as the principal) was in control of the relationship by granting Oxford Township authority to provide sewer service to the Property; and the Township exercised this control by rescinding the 1984 Agreement and requiring the Property to connect to the Township's sewer line. On this reasoning, the trial court concluded that Hensco was an "existing customer" and that the Township's sewer line "replaced" the sewer line that Oxford Township provided to Hensco while acting as agent for the Township. (Trial court op. at 11-14.)[9] In its order, the trial court directed the Township to pay "[c]osts." (Order, 8/08/2013.)

On appeal to this Court,[10] the Township first argues that it did not receive any money from Oxford Township during the time Oxford Township provided sewer service to Hensco; the Township constructed a "completely new sewer system," did not "replace" a previous sewer line owned by the Township, Hensco was not an "existing customer;" and, under *Lohr Estate*, 3 Pa. D.&C. 3rd 307 (C.P. 1977), a tapping fee is chargeable even when a property is connected to another borough's sewer system and a different municipality constructs a new system and requires the property to connect to that line.

---

[9] Although the trial court concluded that the Township lacked legal authority to charge Hensco tapping fees as an "existing customer" and dismissed the Township's lien, the trial court proceeded to address Hensco's argument that the 2002 Ordinance was procedurally defective. In this regard, the trial court concluded, *in dicta*, that the Township did not have to make available to the public a cost figure analysis to demonstrate how it determined the amount of tapping fees. (Trial court op. at 15-16.)

[10] This Court's scope of review of a trial court's order striking a municipal claim is limited to determining whether the trial court abused its discretion or committed an error of law or whether constitutional rights were violated. *Penn Township v. Hanover Foods Corp.*, 847 A.2d 219, 221 (Pa. Cmwlth. 2004).

"[A] contract must be construed according to the meaning of its language. Where the terms of a contract are clear and unambiguous, courts are required to give effect to that language." *Guy M. Cooper, Inc. v. E. Penn School District*, 903 A.2d 608, 613 (Pa. Cmwlth. 2006) (citations omitted). In addition, "[m]unicipal claims are creatures of . . . statutes," which, "being in derogation of the common law, as well as of private rights, must be strictly construed." *Philadelphia v. Cooper*, 61 A. 926, 926-27 (Pa. 1905). *Accord In re Carlyle*, 100 B.R. 217, 220 (Bankr. E.D. Pa. 1989) (collecting authority). Under the rule of strict construction, any ambiguity, doubt, or uncertainty as to the imposition of the lien must be resolved in favor of the landowner. *See Bell v. Berks County Tax Claim Bureau*, 832 A.2d 587, 594 n.14 (Pa. Cmwlth. 2003); *TCI Construction Corp. v. Gangitano*, 589 A.2d 1135, 1137-38 (Pa. Super. 1991).

"Sewers, like water systems, are owned and operated by municipalities in their proprietary capacity, not governmentally. The construction, operation, or maintenance of sewer systems . . . by a municipal corporation is in the nature of a private enterprise." *Hamilton's Appeal*, 16 A.2d 32, 34 (Pa. 1940) (citations and internal quotation marks omitted). Under section 513(a) of the Code, "[a]ny township may by agreement connect with an existing sanitary sewer owned by any municipal corporation or municipality authority for either sewage collection or treatment purposes." 53 P.S. §67513(a). Assuming that all preconditions for contractual formation are met, an agreement between a township and a municipal authority or other township to provide sewer services within the first township's borders is a valid and enforceable contract between the two. *Orbisonia-Rockhill Joint Municipal Authority v. Cromwell Township*, 978 A.2d 425, 428-430 (Pa.

Cmwlth. 2009); s*ee Scalp Level Borough v. Paint Borough*, 797 A.2d 395, 397-98 (Pa. Cmwlth. 2002).

The 1984 Agreement states that the Township "does not own, operate or maintain any public sewer within the vicinity of [the Property]" and that "Oxford [Township] shall act as agent of [the Township] for the purpose of collecting and transporting sewage from properties in [the Township] located in or near [the Property]." (Reproduced Record (R.R.) at 63a-64a). Further, the 1984 Agreement reads: "[The Township] does hereby designate [Oxford Township] as its agent for the purpose of charging, billing, receiving, and collecting all connection, user and/or transportation fees for customers connected to said line but lying in [the Township]." (R.R. at 65a).

Here, pursuant to the plain terms of the 1984 Agreement, the Township delegated any responsibility that it may have had to provide the Property with sewer service to Oxford Township and vested Oxford Township with the authority to connect the Property to its line. Acting on the Township's behalf as an "agent," Oxford Township connected the Property to its sewer line and Hensco paid Oxford Township approximately $40,000.00 in tapping fees. Subsequently, the Township rescinded its delegation, undertook the task of providing sewer service to the relevant area within its borders, and compelled Hensco to disconnect from the Oxford Township line and connect to its line. Hensco then disconnected from the Oxford Township line and connected to the Township's line. The Township billed Hensco $56,000.00 in tapping fees.

Given these facts, we agree with the trial court that Hensco was an "existing customer" and that the Township's sewer line "replac[ed]" a line that the Township had previously made available to Hensco via an agency relationship.

8

*Formerly* 53 P.S. §306(4)(B)(t)(E)(II) ("No tapping fee may be based upon or include the cost of . . . replacing . . . facilities servicing existing customers. . . ."). For all intents and purposes, Oxford Township's sewer line was the Township's designated sewer line because the Township itself, through the 1984 Agreement and pursuant to section 513(a) of the Code, connected with Oxford Township's "existing sanitary sewer" to service the Property and those similarly situated. In other words, Oxford Township acted on behalf of and for the Township in providing sewer service to the Property as an agent. And, as a general matter, the acts of an agent that are performed within the scope of the delegated authority are imputed to or binding upon the principal. *See, e.g.*, *Belmont v. MB Investment Partners, Inc.*, 708 F.3d 470, 494-95 (3d Cir. 2013) (applying Pennsylvania law and discussing imputation); *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S.*, 269 F.3d 187, 198 (3d Cir. 2001) ("To bind a principal by its agent's acts, the plaintiff must demonstrate that the agent was acting on behalf of the principal"). The Township concedes as much in its brief.[11]

Moreover, while the Township did not receive a tapping fee or monthly usage fees under the 1984 Agreement, this does not detract from the fact that the Township delegated its authority to Oxford Township to provide the Property with sewer service and that Oxford Township accepted this undertaking. There is nothing in the record to indicate that, as a practical matter, Hensco could not have remained on the Oxford Township sewer line. Instead, the record establishes that the Township's 2002 Ordinance required Hensco to disconnect from Oxford Township's

---

[11] Brief for the Township at 20 ("Appointment of Oxford [Township] as an 'agent' of the [the Township] was the logical mechanism to accomplish [sewer service to the Property] and ensure that both Townships met their legal obligations. . . . The concept that an agent binds the principal when the agent is acting within the scope of his apparent authority is, of course, applicable here.").

sewer line and connect to the Township's own line, thus "replacing" one line with another. *Formerly* 53 P.S. §306(4)(B)(t)(E)(II).

Although former section 4(B)(t)(E)(II) of the Authorities Act does not define the phrase "existing customers," it does not limit its applicability to those "customers" whose sewer lines are replaced by the same municipality, as the Township contends. Hensco was always a potential "customer" of the Township by virtue of the fact that it was located within the Township's borders. Rather than servicing its "customer" directly, or requiring the "customer" to install an internal sewer system, *see generally Hornstein Enterprises, Inc. v. Township of Lynn*, 634 A.2d 704 (Pa. Cmwlth. 1993), the Township entered into the 1984 Agreement with Oxford Township to serve Hensco for and on its behalf. Quite simply, Hensco was an "existing customer" of the Township the moment it connected to Oxford Township's line pursuant to the Township's direction and authority; but for the Township's delegation of authority, Hensco never would have had the legal right to conjoin with Oxford Township's line. Accordingly, the Township's contractual arrangement to secure, permit, and provide sewer service to its "customer" converted Hensco into an "existing customer."

In addition, to interpret former section 4(B)(t)(E)(II) of the Authorities Act as the Township recommends could effectively permit townships, via contractual arrangements under section 513(a) of the Code, to charge borderline residents tapping fees without limitation – *e.g.*, a township could discard its sewer system, require its residents to connect to another township's system, and then later construct a new or updated sewer system and mandate that its residents connect to that system. Ultimately, the Township's proposed construction would circumvent and nullify the protection sought to be afforded by the "existing customers" exemption, which

10

proscribes the imposition of a second or subsequent round of tapping fees to cover "the cost of expanding, replacing, updating or upgrading facilities." *Formerly* 53 P.S. §306(4)(B)(t)(E)(II). *See Zimmerman v. O'Bannon*, 442 A.2d 674, 677 (Pa. 1982) (stating that as a matter of statutory construction, a court must presume that the General Assembly does not intend a result that is unreasonable).

Therefore, in light of the unique facts of this case, and the legal precept that any ambiguity or doubt regarding the validity of a municipal lien must be resolved in favor of the landowner, we construe former section 4(B)(t)(E)(II) of the Authorities Act in favor of Hensco.

Further, the Township's argument concerning *Lohr Estate* is unpersuasive. As a court of common pleas case, *Lohr Estate* is not binding on this Court, *In Re Funds in Conemaugh Township*, 724 A.2d 990, 994 (Pa. Cmwlth. 1999), and, in any event, we find that decision unpersuasive and distinguishable. While *Lohr Estate* is factually analogous to the present situation, the trial court in that case did not analyze the "existing customers" exception in former section 4(B)(t)(E)(II) of the Authorities Act, dismissed the municipal authority's claims without prejudice, and expressly stated that it was not ruling on the viability or merits of those claims. 3 Pa. D.&C. 3rd at 314, 319.

Next, the Township contends that former section 4(B)(t)(E)(II) of the Authorities Act is inapplicable because there is nothing in the record to indicate that its sewer line was built "in order to meet stricter efficiency, environmental, regulatory or safety standards or to provide better service to or meet the needs of existing customers." *Formerly* 53 P.S. §306(4)(B)(t)(E)(II). To the contrary, however, the Township admitted in its response to Hensco's affidavit of defense that "the Department of Environmental Protection required [the Township] to review sewage

11

needs in the area [around the Property] and the Township concluded, after appropriate study, that a public sewer system was necessary to meet these needs." (R.R. at 154a.) *See Trib Total Media, Inc. v. Highlands School District*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010) (stating that where, as here, the case is based on the parties' pleadings "those facts which have been specifically admitted by [a party] may be considered against him.").

The Township also argues that its lien is valid on the alternative theory that it has the right to collect the difference between the number of EDUs that Hensco consumed on the Oxford Township sewer line and Hensco's usage of 33 EDUs on the Township's sewer line.[12] However, this Court need not address this issue because the Township's lien did not rest on this particular factual basis, legal claim, or monetary amount; instead, the $56,128.00 lien was specifically for "tapping fees and costs." (R.R. at 21a-22a, 32a.) *Cf. Swift v. Northeastern Hospital*, 690 A.2d 719, 723 (Pa. Super. 1997) ("[T]he complaint . . . must apprise the defendant of the claim being asserted and summarize the essential facts to support that claim. If a plaintiff fails to properly plead a separate cause of action, the cause he did not plead is waived."); *Philadelphia v. Steward*, 31 Pa. Super. 72, 74 (1906) ("[A] municipal claim . . . must aver upon its face all the facts necessary to sustain its validity, and unless it does so, it may be summarily struck off on motion. To state the claim so ambiguously as to leave it in doubt . . . is not a compliance with the true intent and spirit of this salutary rule.") (citations omitted). Were this Court to hold otherwise, then there would be serious due process concerns regarding the sufficiency of the

---

[12] The Township did not assert this claim until it filed a supplemental brief on November 30, 2012, to address issues that the trial court wanted to be briefed before it rendered its decision on the merits. (R.R. at 399a; Certified Record Item #33, at 14-15.)

12

notice that Hensco received with respect to the nature of the claim against it and the basis for the lien. *See* section 2 of the MCTLA, 53 P.S. §7445 (Filing Liens) ("Such liens shall state . . . the amount or sum claimed to be due [and] for what improvement the claim is made.").

Finally, the Township contends that the trial court erred in ordering it to pay costs in its order. However, the Township did not raise this issue in its Pa.R.A.P. 1925(b) statement; therefore, it is waived. (R.R. at 424a-25a.) *Kull v. Guisse*, 81 A.3d 148, 160 (Pa. Cmwlth. 2013) ("Issues not included in a party's 1925(b) Statement are waived and will not be addressed on appeal."). Moreover, in its reply brief, the Township states that this issue was a "precautionary measure" and is now "moot" because Hensco never submitted a bill of costs. (Brief for the Township at 22.) Consequently, the Township has abandoned this argument as well.

Accordingly, we affirm. However, we do so without prejudice to the Township filing a municipal or common law claim based upon any increase in the amount of EDUs that Hensco used on Oxford Township's sewer line in comparison to the amount of EDUs that Hensco uses on the Township's sewer line. We, however, express no view on the feasibility or merits of such a claim.[13]

_____
PATRICIA A. McCULLOUGH, Judge

_____

[13] The concurring opinion would affirm based on a legal issue that was not raised, briefed, or argued by the parties. The concurrence concludes that the Township lacked statutory authority to require Hensco to disconnect from Oxford Township's line because the Township failed to adduce evidence that disconnection from Oxford's line bore a reasonable relationship to the public's health or safety. Presumably, the Township did not make this evidentiary showing because Hensco is not challenging the Township's authority to order disconnection. Instead, Hensco seeks exemption from tapping fees for connecting to the Township's line.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hamilton Township,                       :
                Appellant         :
                            :   No. 1575 C.D. 2013
         v.                        :   No. 1576 C.D. 2013
                            :
Hensco, Ltd.                             :

## *__ORDER__*

AND NOW, this 5th day of August, 2014, the August 8, 2013 order of the Court of Common Pleas of Adams County is affirmed.  Our affirmance is without prejudice to Hamilton Township filing another municipal claim for the reasons set forth in the memorandum opinion.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Hamilton Township, : 
          Appellant : 
 : 
 : 
     v. : 
 : No. 1575 C.D. 2013
Hensco, Ltd. : Argued: June 16, 2014

BEFORE:   HONORABLE BERNARD L. McGINLEY, Judge
          HONORABLE RENÉE COHN JUBELIRER, Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge

OPINION NOT REPORTED

CONCURRING OPINION
BY JUDGE McGINLEY                          FILED:  August 5, 2014

I concur with the result reached by the Majority. I agree that Hamilton Township's municipal lien was invalid. However, I write separately to note my disagreement with the Majority's focus on whether Hensco was an "existing customer" under former section 4(B)(t)(E)(II) of the Authorities Act for purposes of imposing a tapping fee. I disagree that this controversy turns on the resolution of that issue.

Instead, I believe the dispositive issue is whether, absent any evidence of a reasonable relationship to the public's health or safety, Hamilton Township had the authority under the Second Class Township Code to force Hensco to disconnect from a perfectly satisfactory sanitary sewer system and reconnect to the Township's system. I believe that the directive issued by Hamilton Township to Hensco which required Hensco to disconnect from Oxford Township's sanitary sewer system was beyond the powers statutorily granted to second class townships.

Townships of the Commonwealth "possess only such powers as have been granted to them by the legislature, either in express terms or which arise by necessary and fair implication or are incident to powers expressly granted or are essential to the declared objects and purposes of the townships." Commonwealth v. Ashenfelder, 198 A.2d 514, 515 (Pa. 1964). Section 1506 of the Second Class Township Code provides:

> The board of supervisors may make and adopt any ordinances, bylaws, rules and regulations not inconsistent with or restrained by the Constitution and laws of this Commonwealth necessary for the proper management, care and control of the township and its finances and the maintenance of peace, good government, health and welfare of the township and its citizens, trade, commerce and manufacturers.

53 P.S. § 66506.

Section 1527 of the Second Class Township Code states:

> [t]he board of supervisors may adopt ordinances to secure the safety of persons or property within the township and to define disturbing the peace within the limits of the township.

53 P.S. § 66527.

Here, there was nothing in the record to indicate that forcing Hensco to disconnect from Oxford Township's sanitary sewer system was necessary for "the proper management, care and control of the township and its finances and the maintenance of peace, good government, health and welfare of the township and its citizens." Ordinance 97 did not represent a rational response to any legitimate

BLM - 2

problem.[1] By all accounts, Hensco was adequately served by Oxford Township. As Hensco pointed out in its Affidavit of Defense:

> 24. In accordance with Ordinance 97 and the Termination Agreement, Hamilton Township issued orders for Hensco to disconnect its lateral from the Oxford Township Collection System and connect said lateral to the Route 94 Sanitary Sewer System.
>
> 25. At the time of said order, Hensco was adequately served by Oxford Township and did not desire to change its sewer system connection but was forced to do so by Hamilton Township's actions.

There is nothing in the Second Class Township Code which authorizes a township to require or compel any property owner to disconnect from an existing, satisfactory public or private sanitary sewer system in order to re-connect to the Township's sanitary sewer system. In fact, the Township's authority to require an owner to connect to its sanitary sewer system appears to be restricted to situations where the owner is not already connected to an acceptable public or private system.

This is not to say that a second class township is prohibited from requiring disconnection by an unauthorized user or to prevent health hazards. However, absent any evidence that Ordinance 97, to the extent that it forced Hensco to disconnect from Oxford Township, was in furtherance of the public

---

[1] The "Termination Agreement" between Hamilton Township and Oxford Township did not provide the requisite authority for Hamilton Township's action. Hamilton Township possessed only such powers as have been granted it by the legislature.

interest in efficient and safe disposal of sewage, Hamilton Township acted beyond its authority.

Because I agree that Hamilton Township's municipal lien was invalid, I concur in the Majority's conclusion that the trial court must be affirmed.


_____
BERNARD L. McGINLEY, Judge